## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MO-KAN IRON WORKERS PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>TELIGENT, INC. and JASON GRENFELL-GARDNER,<br><br>       Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Mo-Kan Iron Workers Pension Fund ("Mo-Kan" or "Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys for Plaintiff's Complaint against Defendants Teligent, Inc. ("Teligent" or the "Company") and Jason Grenfell-Gardner ("Grenfell-Gardner") (collectively, "Defendants"), alleges the following based upon personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Teligent's press releases, Securities and Exchange Commission ("SEC") filings, analyst reports, media reports, and other publicly disclosed reports and information about the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1. This is a securities class action on behalf of Plaintiff and all other persons or entities, except for Defendants, who purchased or otherwise acquired Teligent common stock between May 2, 2017 and November 7, 2017, inclusive (the "Class Period"). This action is brought on behalf of the Class (defined below) for violations of §§10(b) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

2.  Teligent is a company incorporated under the laws of the province of Delaware and is headquartered in Buena, New Jersey. Teligent's common stock trades on the NASDAQ under the symbol "TLGT."

3.  Teligent is a specialty generic pharmaceutical company.

4.  Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements regarding, and/or failed to disclose, product non-conformities in research and development ("R&D") and non-compliance with applicable regulations.

5.  The Company continued to mislead investors until November 6, 2017, when the truth began to emerge. That day, after the market closed, Teligent issued a press release disclosing its third quarter 2017 ("Q3 2017") results, which exposed the depths of Teligent's R&D, production, and legal issues. According to the press release and Form 10-Q filed shortly thereafter on November 9, 2017 ("Q3 2017 10-Q"), total revenue fell to $13.7 million, a 15.4% drop from the prior year's Q3 revenue of $16.2 million. The Company's revenue was also off 25.5% from its second quarter 2017 revenue of $18.4 million.

6.  On this news Teligent's share price fell $2.29 on November 7, 2017.

7.  As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

10.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Defendants' false and misleading statements and omissions were disseminated in this District.  Teligent's common stock is listed on the NASDAQ, a national securities exchange. Therefore, the alleged illegal conduct was carried out, in part, in this judicial District.

11.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and facilities of the national securities exchange.

## PARTIES

12.      As set forth in the attached Certification, Plaintiff Mo-Kan acquired Teligent common stock at artificially inflated prices during the Class Period and was damaged due to the federal securities violations and related misstatements alleged herein.

13.      Defendant Teligent is incorporated in Delaware, with headquarters located in Buena, New Jersey.  Teligent common stock trades on the NASDAQ under the ticker symbol "TLGT."

14.      Defendant Grenfell-Gardner has served at all relevant times as the Company's President and Chief Executive Officer ("CEO").

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

15.     Teligent researches, develops, produces, supplies, and sells generic pharmaceutical products.

16.     On May 2, 2017, Teligent filed a Form 8-K with the SEC (the "May 2017 8-K") that highlighted the Company's revenue growth in the first quarter of of 2017.  On the earnings call following the May 2017 8-K's release, Grenfell-Gardner stated that "[t]his growth has been driven by a combination of new product launches and competitive supply chain dynamics to which Teligent has been able to respond effectively."  Then, in discussing "what comes next[,]" Grenfell-Gardner took his praise of Teligent's supposedly well-run R&D-approval-production-launch process one step further:

> Over the coming quarter, our team is focused on delivering products in the existing product pipeline, responding to FDA [Food and Drug Administration] and Health Canada inquiries and preparing for the final submissions for 2017. This is the crunch period of GDUFA [Generic Drug User Fee Amendments] Year 5 and Year 4 overlap for FDA submissions. And we are committed to upholding our responsibilities with respect to the FDA to ensure the timely processing of our applications.
>
> I would point out that the two approvals that we received in this past quarter were great examples of the benefit of this discipline. With one application approved at 18 months and the other at just over 14 months. To the extent that we can replicate these timely approvals with our current investments in R&D, we will continue to deliver value in the form of the return on these investments as we launch products to the market. We have 33 ANDAs [Abbreviated New Drug Applications] on file with the FDA today that represent a total addressable market of approximately $2 billion[.]

17.     The forgoing was false and misleading because Defendants failed to disclose product non-conformities in R&D and non-compliance with applicable regulations.

18.     On November 6, 2017, the truth came to light when Teligent filed a Form 8-K with the SEC (the "November 2017 8-K") disclosing disappointing Q3 2017 earnings.  Total revenue

fell to $13.7 million from the previous quarter's $18.4 million, a 25.5% drop, and from Q3 2016's $16.2 million, a 15.4% drop.

19.     Teligent's press release quotes Grenfell-Gardner attributing the drop in revenue to FDA approval delays and competition: "'This third quarter has been challenging for Teligent. These results and our revised outlook for the remainder of the year, are a result of the knock-on effect of ANDA approval delays and increased competition in one of our largest products[.]'"

20.     On the earnings call following the release of the November 2017 8-K, Grenfell-Gardner stated that the Company experienced and addressed undefined manufacturing issues:

> New product launches during the quarter certainly helped to mitigate some of the economic impact of the Lidocaine volume declines. However, new launches do take time to ramp up.
>
> In addition, our team faced manufacturing challenges, for instance related to an excipient in a high-volume product that was being provided to us with particles that had the potential to adulterate our finished goods. The team spent a significant amount of effort in resolving these challenges, which they now have. However, the engineering expenses related to the fix contributed to lower-than-anticipated margins in the quarter. These activities combined with lower lidocaine sales resulted in margins below our expectations.

## NO SAFE HARBOR

21.     Teligent's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.   Because most of the false and misleading statements related to existing facts or conditions, the Safe Harbor has no applicability.   To the extent that known trends should have been included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), they are excluded from the protection of the statutory Safe Harbor.  15 U.S.C. §78u-5(b)(2)(A).

22.     The Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was

authorized and/or approved by an executive officer and/or director of Teligent who knew that the FLS was false.  In addition, the FLS was contradicted by existing, undisclosed material facts that were required to be disclosed, so that the FLS would not be misleading.  Finally, most of the purported "Safe Harbor" warnings were themselves misleading because they warned of "risks" that had already materialized or failed to provide any meaningful disclosures of the relevant risks.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class consisting of all those who purchased or otherwise acquired Teligent securities on U.S. exchanges during the Class Period and were damaged upon the revelation of the alleged truth (the "Class").  Excluded from the Class are: Defendants herein; the officers and directors of the Company, at all relevant times; members of Defendants' immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Teligent common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  The members of the proposed Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

25.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

26.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interest, antagonism, or conflict with the members of the Class.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

          a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

          b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Teligent;

          c.     whether Defendant Grenfell-Gardner caused Teligent to issue false and misleading financial statements during the Class Period;

          d.     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

          e.     whether the prices of Teligent common stock during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

          f.     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress

the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

29.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations and/or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Teligent common stock is traded in an efficient market;

d.      the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e.      the Company traded on the NASDAQ and was covered by multiple analysts;

f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g.      Plaintiff and members of the Class purchased, acquired, and/or sold Teligent common stock between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

30.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

31.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*,

406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**
**Violations of §10(b) of the Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

32.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

33.     This Count is asserted against all Defendants and based upon violations of §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

34.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business that operated as fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities.   Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other members of the Class, as alleged herein; (ii) artificially inflate and maintain the market price of Teligent common stock; and (iii) cause Plaintiff and the other members of the Class to purchase, or otherwise acquire, Teligent common stock and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan, and course of conduct, Defendants took the actions set forth herein.

35.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual

reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media, that were designed to influence the market for Teligent common stock.  Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Teligent's ability to timely bring products to market.

36.     By virtue of their positions at Teligent, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted, as described above.

37.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior manager and director of Teligent, Grenfell-Gardner had knowledge of the details of Teligent's internal affairs.

38.     Grenfell-Gardner is liable both directly and indirectly for the wrongs complained of herein.  Because of his position of control and authority, Grenfell-Gardner was able to, and did, directly or indirectly, control the content of the statements of Teligent.  As an officer and director of a publicly held company, Grenfell-Gardner had a duty to disseminate timely, accurate, and truthful information with respect to Teligent's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading

reports, releases, and public statements, the market price of Teligent common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Teligent's business and financial condition, which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Teligent common stock at artificially inflated prices and relied upon the price of the securities, integrity of the market for the securities, and/or statements disseminated by Defendants and were damaged thereby.

39.     During the Class Period, Teligent common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Teligent common stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Teligent common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Teligent common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

40.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

41.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions, and sales of Teligent common stock during the Class Period upon the disclosure that the Company had disseminated to the public information about its ability to adequately research, develop, obtain approval for, and launch products that was materially misleading.

<u>**COUNT II**</u>
**Violations of §20(a) of the Exchange Act**
**Against Defendant Grenfell-Gardner**

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against Defendant Grenfell-Gardner and based upon violations of §20(a) of the Exchange Act, 15 U.S.C. §78(t)(a).

44.     During the Class Period, Grenfell-Gardner participated in the operation and management of Teligent and conducted and participated, directly and indirectly, in the conduct of Teligent's business affairs.  Because of his senior position as the Company's President and CEO, he knew the adverse non-public information alleged herein.

45.     As officer and director of a publicly owned company, Grenfell-Gardner had a duty to disseminate accurate and truthful information, with respect to Teligent's financial condition and operations, and promptly correct any public statements issued by Teligent that had become materially false or misleading.

46.     Because of his position of control and authority as a senior officer and director, Grenfell-Gardner was able to, and did, control the contents of the various reports, press releases, and public filings that Teligent disseminated in the marketplace during the Class Period concerning Teligent's results of operations.  Throughout the Class Period, Grenfell-Gardner exercised his power and authority to cause Teligent to engage in the wrongful acts complained of herein. Grenfell-Gardner, therefore, was a "controlling person" of Teligent within the meaning of §20(a)

of the Exchange Act.  In this capacity, he participated in the unlawful conduct alleged that artificially inflated the market price of Teligent common stock.

47.     Grenfell-Gardner, therefore, acted as a controlling person of Teligent.  By reason of his senior management positions and being a director of Teligent, Grenfell-Gardner had the power to direct the actions of Teligent and exercised same to cause the Company to engage in the unlawful acts and conduct complained of herein.  Grenfell-Gardner exercised control over the general operations of Teligent and possessed the power to control the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

48.     By reason of the above conduct, Defendant Grenfell-Gardner is liable pursuant to §20(a) of the Exchange Act for the violations committed by Teligent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Declaring that the instant action may be maintained as a class action under Fed. R. Civ. P. 23 and certifying Plaintiff as the Class Representative;

B.     Awarding Plaintiff and the other members of the Class compensatory damages;

C.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

D.     Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  April 15, 2019                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

  _/s/ Thomas L. Laughlin, IV_____
Thomas L. Laughlin, IV (TL-8888)
Donald A. Broggi (DB-9661)
Rhiana L. Swartz (RS-2332)
Jeffrey P. Jacobson (JJ-6773)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
Email: tlaughlin@scott-scott.com
          dbroggi@scott-scott.com
          rswartz@scott-scott.com
          jjacobson@scott-scott.com

_Attorneys for Plaintiff Mo-Kan Iron Workers_
_Pension Fund_

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

We, David Coleman and Donald Greenwell, III, hereby certify that the following is true and correct to the best of our knowledge, information, and belief:

1.      We are Trustees of the Mo-Kan Iron Workers Pension Fund ("Mo-Kan") and duly authorized to act on behalf of Mo-Kan.

2.      We have reviewed the Complaint in this matter and authorize Scott+Scott Attorneys at Law LLP to file the Complaint and lead plaintiff papers in this matter on behalf of Mo-Kan.

3.      Mo-Kan is willing to serve as a representative party on behalf of the purchasers of Teligent, Inc. ("Teligent") securities during the Class Period, including providing testimony at deposition and trial, if necessary.

4.      During the Class Period, Mo-Kan purchased and/or sold the security that is the subject of the Complaint, as set forth in the attached **Schedule A**.

5.      Mo-Kan did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Exchange Act of 1934 (the "Exchange Act").

6.      During the three-year period preceding the date of the signing of this Certification, Mo-Kan has not sought to serve, or served, as a representative party or lead plaintiff on behalf of a class in any private actions arising under the Exchange Act.

7.      Mo-Kan will not accept any payment for serving as a representative party on behalf of the Class beyond the *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

We declare under penalty of perjury that the foregoing is true and correct.

Executed at _Kansas City, MO_ on the _12th_ day of _April_, 2019.
          (City, State)


_____                    _____
David Coleman                               Donald Greenwell, III
Trustee                                     Trustee
Mo-Kan Iron Workers Pension Fund            Mo-Kan Iron Workers Pension Fund

2

# Schedule A

**TELIGENT INC**                                    **Ticker:** **TLGT**      **Cusip:**   **87960W104**

Class Period: 05/02/2017 to 11/07/2017

**MO-KAN Iron Workers Pension Fund**

|  | DATE | SHARES | PRICE |
|---|---|---|---|
| Purchases: | 9/20/2017 | 10,374 | $6.66 |
| **Sales:** | 11/7/2017 | 5,340 | $2.96 |