**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA POLICE PENSION FUND AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>    v.<br><br>TELIGENT, INC. and JASON GRENFELL-GARDNER,<br><br>                              Defendants. | Case No. 1:19-cv-03354-VM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND
       MERITS FINAL APPROVAL ............................................................................ 3

       A.     Lead Plaintiff and Lead Counsel Have Adequately Represented the
              Settlement Class ...................................................................................... 4

       B.     The Settlement Was Reached Only After Arm's-Length Negotiations Under
              the Auspices of an Experienced Mediator, and Following Fulsome
              Discovery ................................................................................................. 5

       C.     The Proposed Settlement Is Fair, Reasonable, and Adequate in Light of the
              Costs and Risks of Further Litigation and Additional Factors as Well .................. 8

              1.     Risks in Establishing Liability ...................................................... 9

              2.     Risks Relating to Reliance, Loss Causation, and Damages ........................ 10

              3.     Risks Related to Class Certification ............................................... 11

              4.     Risks Related to Appeals .............................................................. 11

              5.     The Settlement Is Also Fair and Reasonable in Light of Realistically
                     Recoverable Damages ................................................................. 12

              6.     The Ability of Defendants to Withstand a Greater Judgment ...................... 13

              7.     The Costs and Delays of Continued Litigation Support Approval of
                     the Settlement ......................................................................... 13

       D.     All Other Rule 23(e)(2)(C) Factors, Including the Equitable Treatment of
              Class Members Relative to Each Other, Also Support Approval .......................... 14

       E.     The Reaction of the Settlement Class to the Settlement ........................................ 16

III.   THE PLAN OF ALLOCATION SHOULD BE APPROVED ......................................... 17

VI.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE CLASS ............. 18

V.     THE NOTICE TO THE SETTLEMENT CLASS SATISFIED THE
       REQUIREMENTS OF RULE 23 AND DUE PROCESS .................................................. 18

VI.    CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  568 U.S. 455 (2013)..................................................................................................5

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974)....................................................................4, 6, 8, 13

*Christine Asia Co., Ltd. v. Yun Ma,*
  No. 15-md-02631 (CM), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................11

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001)......................................................................................6

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)...............................................................................................18

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000)......................................................................................4

*Guevoura Fund Ltd. v. Sillerman,*
  No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................9

*Henry v. Little Mint, Inc.,*
  No. 12 CIV 3996 CM, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ...................11

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
  298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................11, 19

*In re Am. Bank Note Holographics, Inc. Secs. Litig.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................17

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
  No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).........................9, 13, 14

*In re Barrick Gold Sec. Litig.,*
  314 F.R.D. 91 (S.D.N.Y. 2016) ..............................................................................4

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.,*
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................17

*In re Blue Apron Holdings, Inc. Sec. Litig.,*
  No. 17-CV-04846, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021) .............................19

*In re Canadian Superior Sec. Litig.*,
No. 09 Civ. 10087 (SAS), 2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011) ............................12

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)...............................12

*In re Citigroup Inc. Sec. Litig.*,
No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ..................................3

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x 37 (2d
Cir. 2016) .................................................................................................................6, 10

*In re FLAG Telecom Hold'gs, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...........................6, 8, 17

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ...........................................14

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................................................17

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) .............................................................................................8

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ...........................................................................................11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...................................12

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................................4

*In re Prudential Sec., Inc.*,
No. MDL No. 1005, M- 21-67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995)..............13

*In re Qudian Inc. Sec. Litig.*,
No. 17-cv-09741-JFK, 2021 WL 2383550 (S.D.N.Y. June 8, 2021) ......................................19

*In re Sadia S.A. Sec. Litig.*,
No. 08 CIV. 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011)...............................16

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 16-cv-06728 (CM), 2020 WL 4196468 (S.D.N.Y. July 21, 2020)..............................16, 17

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .............................16

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..........................7, 11

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)...................................10

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
    No. 17CV5543, 2021 WL 76328 (S.D.N.Y. Jan. 7, 2021).......................................................9

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 8331 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)...................................7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................................3, 4, 18

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)....................................................................................................6

*Yang v. Focus Media Holding Ltd.*,
    No. 11 Civ. 9051 (CM), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ...............................6, 7

**Statutes, Rules, and Regulations**

15 U.S.C.
    §78u-4(a)(7) ........................................................................................................................18

Federal Rules of Civil Procedure
    Rule 23(a)...........................................................................................................................18
    Rule 23(b)(3)......................................................................................................................18
    Rule 23(c)(2)(B)...........................................................................................................18, 19
    Rule 23(e)..........................................................................................................................3, 4
    Rule 23(e)(1).......................................................................................................................18
    Rule 23(e)(2)......................................................................................................................3, 4
    Rule 23(e)(2)(A)...................................................................................................................4
    Rule 23(e)(2)(B)...................................................................................................................6
    Rule 23(e)(2)(C).............................................................................................................8, 14
    Rule 23(e)(2)(C)(ii)-(iv)......................................................................................................14
    Rule 23(e)(2)(C)(iv)............................................................................................................15
    Rule 23(e)(3)........................................................................................................................15

**Other Authorities**

*Janeen McIntosh & Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA ECONOMIC CONSULTING (Jan. 25, 2021) .....................................2, 12

Lead Plaintiff Oklahoma Police Pension and Retirement System ("Oklahoma Police" or "Lead Plaintiff"), on behalf of itself and the preliminarily approved settlement Class, respectfully submits this memorandum of points and authorities in support of its motion for final approval of the proposed Settlement resolving all claims asserted in this securities class action (the "Action"), and for approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation").

## I.   INTRODUCTION

Subject to final Court approval, Lead Plaintiff has agreed to settle all claims in this Action in exchange for a cash payment of $6,000,000 for the benefit of the Class.  The Settlement is the product of an extensive investigation concerning the claims asserted herein and vigorous prosecution of the Action on behalf of the Class.  It was achieved after over two years of hard-fought litigation, considerable discovery, and an arm's-length negotiation and mediation process conducted under the auspices of mediator Robert A. Meyer of JAMS (the "Mediator"), a well-respected neutral with extensive experience in mediating complex securities class actions such as this one.  The Court granted preliminary approval of the Settlement on July 20, 2021.  Lead Plaintiff and its counsel, Scott+Scott Attorneys at Law LLP ("Lead Counsel") respectfully submit that the Settlement is an excellent result for the Class and should be finally approved.

As set forth in greater detail in the accompanying Declaration of Max R. Schwartz ("Schwartz Decl."), the Settlement follows a full-day and also a half-day mediation session with the Mediator and a litany of follow-up discussions between the Mediator and counsel.  Through the mediation and active litigation, the parties candidly addressed the strengths and weaknesses of each party's arguments with respect to liability, damages and other issues.  Further, due to the advanced stage of the Action, all parties were fully informed of its strengths and weaknesses at the time of the Settlement.  This creates a presumption that the Settlement is fair.

The record and circumstances of the Settlement fully support that presumption.  While Lead Plaintiff and Lead Counsel believe that the Class has strong claims, they also recognized that they would have faced significant risks going forward.  Indeed, the issues of liability, scienter,

causation, reliance, and damages were hotly contested throughout the Action, and would have continued to be contested.  In particular, Defendants vigorously maintained that they did not make any untrue or misleading statements, asserting that the challenged statements are accurate statements of fact, inactionable puffery or opinions, and that the Second Amended Complaint ("SAC") mischaracterizes the FDA's 483 observations and related correspondence underlying the claims.  Further, even if Lead Plaintiff established liability, Defendants advanced reliance, causation, and damages arguments that, if successful, would have drastically reduced or eliminated the Class' ability to recover damages.  *See* Schwartz Decl., ¶¶57-58.

Despite those risks, the Settlement achieved by Lead Plaintiff and Lead Counsel is a substantial cash recovery.  It also considerably outpaces similar cases as a percentage of the available damages.  From 2012 through 2020, the median recovery in securities class actions involving total investor losses of $20 million-$50 million was 5.2% of estimated losses.  *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA ECONOMIC CONSULTING, Jan. 25, 2021, https://www.nera.com/content/ dam/nera/publications/2021/PUB_2020_Full-Year_Trends_01222 1.pdf, at 19.  By contrast, the Settlement here recovered 15% of Lead Plaintiff's estimated maximum class-wide damages, and an even higher percentage, approximately 20%, of Defendants' corresponding estimate, exceeding most securities class action settlements.  *Id.*, ¶5.

Thus, the $6,000,000 cash Settlement provides a certain, immediate, and substantial cash recovery for the Class, while eliminating the many risks of continued litigation, which could result in a lower recovery or no recovery at all.  In light of those risks, and the substantial time and expense that continued litigation would require, Lead Plaintiff and Lead Counsel, based on their substantial experience in securities class actions, believe that the Settlement is an outstanding result for the Class and warrants approval by the Court.  *See id.*, ¶80; *see also* Declaration of Ginger Sigler on Behalf of Oklahoma Police Pension and Retirement System ("Oklahoma Police Decl."), ¶10.

Lead Plaintiff also respectfully requests that the Court approve the proposed Plan of Allocation, which governs how Class Members' claims will be calculated and, ultimately, how the Net Settlement Fund will be distributed to valid claimants.  The Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant, Chad Coffman, CFA ("Coffman") and is similar to plans approved in other securities class actions.  It provides for a *pro rata* and equitable distribution among the Class members.  Lead Plaintiff respectfully submits that the Plan of Allocation is a fair and reasonable method for distributing the Settlement proceeds and also warrants the Court's approval.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND MERITS FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class-action claims.  *See* Fed. R. Civ. P. 23(e).  A class-action settlement merits approval where the court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

The Second Circuit has recognized that public policy favors the settlement of disputed claims among private litigants, particularly in class actions.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'").[1]  In ruling on final approval of a class settlement, courts examine both the negotiating process leading to the settlement, and the settlement's substantive terms.  *Id.*; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014).

Rule 23(e)(2) provides that, in assessing the "fair, reasonable, and adequate" standard, courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

---

[1]     Unless otherwise indicated, citations are omitted and emphasis is added.

agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Similarly, the Second Circuit has historically held that courts should consider the following factors from *City of Detroit v. Grinnell Corp.* in evaluating class settlements:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974); *see also Visa*, 396 F.3d at 117.

The Advisory Committee Notes to the 2018 amendments to the Federal Rules note that the four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by a Court of Appeals, but "rather [seek] to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments. Plaintiff will therefore discuss the Settlement's "fairness, reasonableness, and adequacy" principally under the four factors listed in Rule 23(e)(2), while also discussing application of relevant, non-duplicative *Grinnell* factors. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (noting that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors"). As discussed below, ***all*** of the above factors strongly support approval here.

### A. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

In weighing approval, a court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "The adequacy requirement entails inquiry as to whether: (1) plaintiffs' interests are antagonistic to the interest of other members of the class and (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation." *See In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016).

Here, there is no antagonism or conflict between Lead Plaintiff and the proposed class. Lead Plaintiff, and the other Settlement Class Members, purchased Teligent common stock during

the Class Period and they were all injured by the same alleged misstatements.  If Lead Plaintiff proved its claims at trial, it would therefore also prove the Settlement Class's claims.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Next, it is respectfully submitted that Lead Plaintiff and Lead Counsel vigorously represented the Settlement Class and successfully prosecuted the Action for over two years.  The numerous actions that Lead Plaintiff and Lead Counsel have undertaken here include: a lengthy investigation of Teligent and the misstatements, engaging an FDA expert to assess the relevant FDA observations and regulations, preparing two amended complaints, successfully defeating the bulk of Defendants' motion to dismiss, substantially advancing document discovery, sitting for a deposition (and defending the deposition of Lead Plaintiff's class certification expert), filing an opening brief in support of class certification, engaging in multiple mediations and numerous follow-up conversations with the Mediator, and preparing the Settlement, preliminary approval, and final approval papers and overseeing the notice and claims process.  *See* Schwartz Decl., ¶¶22, 72-73; Fee and Expense Memo at 6-7.

Finally, the result obtained by Lead Plaintiff and Lead Counsel – a highly-favorable $6,000,000 cash Settlement, which recovers a substantially higher percentage of damages than typical securities cases – further supports approval.  Lead Counsel also note that they are well qualified and highly experienced in securities litigation, and achieved a favorable result here against highly regarded opposing counsel.  *See* Declaration of Daryl F. Scott on Behalf of Scott+Scott Attorneys at Law LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Scott+Scott Decl."), Ex. C; Fee and Expense Memo at 10; Schwartz Decl., ¶¶78-80. Accordingly, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.

### B.   The Settlement Was Reached Only After Arm's-Length Negotiations Under the Auspices of an Experienced Mediator, and Following Fulsome Discovery

Courts must also consider whether a proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  They also traditionally consider certain other related factors in

assessing the "procedural" fairness of a settlement, including: (i) whether counsel had an adequate understanding of the case's strengths and weakness based on "the stage of the proceedings and the amount of discovery completed,"[2] (ii) any indicia of collusion;[3] and (iii) the involvement of an independent mediator.  These factors also strongly support approval of the Settlement.

First, the Settlement was reached only after arm's-length negotiations conducted under the auspices of an experienced JAMS mediator.  *See* Schwartz Decl., ¶¶39-44.  The parties engaged in two formal mediation sessions – a full-day session on October 2, 2020 and a half-day session on April 5, 2021 – and numerous follow-up discussions with the Mediator.  In advance of the first mediation, the parties exchanged detailed mediation statements (and exhibits thereto) highlighting the factual and legal issues in dispute and held a pre-mediation conference call with the Mediator. In connection with the mediation, Lead Plaintiff also consulted extensively with Mr. Coffman of Global Economics Group regarding damages.  These facts support a finding that the Settlement is procedurally fair and free of collusion.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051 (CM), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (participation of highly qualified mediator "strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *In re FLAG Telecom Hold'gs, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (finding that proposed settlement was fair and reasonable "is strengthened by the fact that [it] was reached in an extended mediation").

---

[2]     *See Grinnell*, 495 F.2d at 463 (third factor); *see also In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015) ("the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement"), *aff'd*, 674 F. App'x 37 (2d Cir. 2016).

[3]     *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) ("the absence of any indication of collusion, the protracted settlement negotiations, the ability and experience of plaintiffs' counsel, [and] the extensive discovery preceding settlement . . . are important indicia of the propriety of settlement negotiations").

Next, as noted above, the parties and their counsel were well informed about the strengths and weaknesses of the case before they agreed to settle. Here, for example, Lead Plaintiff and Lead Counsel conducted a thorough investigation of Defendants by, among other things, reviewing SEC filings, analyst reports, investor conference call transcripts, Company press releases, news articles, applicable FDA regulations, obtaining relevant FDA reports regarding Teligent FOIA requests with the FDA, and hiring an FDA expert to assess the relevant FDA 483 observations and related correspondence. Lead Plaintiff and Lead Counsel also obtained and reviewed almost 15,000 internal documents produced by Defendants and non-parties in discovery. Schwartz Decl., ¶¶30, 33, 72(h). In addition, through the extended settlement negotiations, all parties exchanged detailed mediation statements, and subsequent papers and information, which narrowed the issues in the case, and focused the parties on the strengths and weaknesses of each side's liability and damages arguments. *Id.*, ¶¶39-44, 72(m).

Lead Plaintiff itself strongly supports the Settlement, which is another factor that weighs in favor of approval. Indeed, Lead Plaintiff is a sophisticated institutional investor of the exact type envisioned by the PSLRA to lead securities class actions like this one. *See* Oklahoma Police Decl., ¶¶4, 7-9. A settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

Finally, the judgment of Lead Counsel, who are highly experienced in securities class-action litigation, is entitled to "great weight." *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014); *accord In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Lead Counsel here strongly endorses the Settlement.

### C.    The Proposed Settlement Is Fair, Reasonable, and Adequate in Light of the Costs and Risks of Further Litigation and Additional Factors as Well

In determining whether a class action settlement is "fair, reasonable, and adequate," the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" and other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  This is often the most important factor in analyzing a proposed settlement.  *See Grinnell*, 495 F.2d at 455 ("most important factor" is "strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.").[4]

As a threshold matter, courts "have long recognized that [securities class action] litigation is notably difficult and notoriously uncertain."  *FLAG Telecom*, 2010 WL 4537550, at *15. Accordingly, such suits "readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."  *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).  This case was no exception.

As detailed in the Schwartz Decl. and below, continuing the litigation here through completion of discovery, class certification, summary judgment, trial, and inevitable appeals would have presented numerous significant risks – and necessarily involved substantial costs and delays – all without any assurance of obtaining a better or indeed any recovery.  Schwartz Decl., ¶¶51-63.  The proposed $6,000,000 Settlement represents 15% of Lead Plaintiff's estimated maximum class-wide damages, and an even higher percentage, approximately 20%, of Defendants' corresponding estimate, exceeding most securities class action settlements, and thus represents a highly favorable Settlement given the litigation risks here.  *Id.*, ¶5.

---

[4]    Indeed, this factor under Rule 23(e)(2)(C) essentially encompasses at least six of the nine factors of the traditional *Grinnell* analysis.  *See Grinnell*, 495 F.2d at 463 ("(1) the complexity, expense and likely duration of the litigation; . . . (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; . . . (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation").

1.     **Risks in Establishing Liability**

Lead Plaintiff alleged that, among other things, Defendants' statement during the Class Period that Teligent had not received any Form 483 observations from the FDA was false and misleading, because in the months prior to the Class Period, the FDA had issued a 483 Letter to Teligent.  It further alleges that, as a result of responding to the FDA and of the underlying issues related to the 483 Letter, Teligent's pipeline of new products along with its ability to develop new products and win FDA approval for them was harmed, which caused a significant drop in Teligent's stock price. *See* Schwartz Decl., ¶18.

Defendants, however, consistently and vigorously denied that Lead Plaintiff could prove that any of the challenged statements were materially false or misleading.  Instead, they asserted that the challenged statements are accurate statements of fact, inactionable puffery, or opinions, and that the SAC mischaracterizes the 483 observations and related correspondence.  Among other things, Defendants argued that their statements regarding 483 observations were regarding a different class of 483 observations than those at issue here and would have been understood as such by investors, and also that the single 483 Letter in question before the Class Period was not material.  For similar reasons, Defendants maintained that Lead Plaintiff could not prove that the alleged misstatements were made with scienter.

While Lead Plaintiff has substantial responses to these arguments, victory was not assured, and the uncertainty of establishing falsity and scienter, especially in a case that depends on complex regulatory issues, weighs strongly in favor of approving the Settlement.  *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, No. 17CV5543, 2021 WL 76328, at *3 (S.D.N.Y. Jan. 7, 2021) (noting "substantial risk" plaintiff faced in proving scienter); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019) ("[P]roof of scienter is typically a difficult challenge in a securities fraud action.").

9

## 2. Risks Relating to Reliance, Loss Causation, and Damages

Even if Lead Plaintiff were able to establish liability and scienter, that would not reduce its burden or entail success on the additional elements of reliance, causation, and damages. Throughout the litigation, including at the class certification stage, Defendants asserted that they had defeated the fraud-on-the-market presumption of reliance by severing the link between the alleged misrepresentation and the price paid for Teligent common stock and had showed that the misrepresentation did not lead to a distorted price.  ECF No. 73.  Defendants also asserted that the SAC's alleged corrective disclosures in November 2017 neither "corrected" any prior misstatement nor "revealed" any concealed information.  ECF No. 40.  Further, Defendants argued that the damages methodology described by Lead Plaintiff's expert, Coffman, in connection with class certification is inappropriate on the grounds that (1) he had used a similar analysis in other securities cases, and (2) the model provides only a vague description of the potential methods to quantify the artificial inflation caused by the alleged misstatements.  ECF No. 73.  For these reasons, Defendants concluded that damages cannot be calculated using the standard "out-of-pocket method" that underlies many securities cases. *Id.*; *see also* Schwartz Decl., ¶57.  Moreover, at summary judgment and trial, Defendants' experts would have argued that a substantial portion of the losses experienced by the Class were due to factors unrelated to any alleged misconduct, thus eliminating that portion of any potential recovery.

There was a considerable risk that a battle of the experts would ensue and that the finder of fact would agree with Defendants' arguments, which would leave damages substantially less than the amount Lead Plaintiff had asserted, or even zero.  *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions").  *See Facebook*, 2015 WL 6971424, at *5 ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount

Plaintiffs' losses.  Under such circumstances, a settlement is generally favored over continued litigation."); *Veeco*, 2007 WL 4115809, at *9 ("a very lengthy and complex battle of the parties' experts likely would have ensued at trial, with unpredictable results.  These risks as to liability strongly militate in favor of the Settlement.").  The Settlement eliminates those risks and provides a certain recovery for the Class.

### 3.      Risks Related to Class Certification

At the time of the Settlement, Lead Plaintiff had already filed its opening class certification brief and Defendants had filed their brief in opposition thereto, but Lead Plaintiff had not yet filed its reply brief.  Defendants' opposing arguments regarding reliance and damages (discussed above, §II.C.2), along with attacks on adequacy involving purported knowledge, allowed Lead Plaintiff and Lead Counsel to assess the strengths and weaknesses of the class certification motion, and of the Action.  The risk that Lead Plaintiff might not succeed in certifying the full class proposed in its motion further supports approval of the Settlement.  *See Christine Asia Co., Ltd. v. Yun Ma*, No. 15-md-02631 (CM), 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) ("the risk of maintaining a class through trial supports the approval of a settlement"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 140 (S.D.N.Y. 2010) ("the uncertainty surrounding class certification supports approval of the Settlement").

### 4.      Risks Related to Appeals

Even if Lead Plaintiff and the Class managed to obtain any recovery at trial, inevitable appeals from Defendants would likely have put that recovery at risk, while entailing further delay and expense.  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. 2014) (approving settlement in light of including "the risks, complexity, duration, and expense of continuing litigation," including defendants' likelihood of appeal); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) (approving settlement in light of "all the risks of pursuing the actions through further litigation and trial," including "yet more risks in terms of appeals").  Therefore, the Settlement eliminates this further risk and provides an immediate recovery for the Class.  *Henry v. Little Mint, Inc.*, No. 12 CIV. 3996 CM, 2014 WL

2199427, at *7 (S.D.N.Y. May 23, 2014) ("Any judgment would likely be appealed, thereby extending the duration of the litigation.  This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.").

### 5.    The Settlement Is Also Fair and Reasonable in Light of Realistically Recoverable Damages

Here, the $6,000,000 Settlement is a substantial result for the Class.  As explained in the Schwartz Decl. (at ¶5), the Settlement represents approximately 15% of Lead Plaintiff's estimated maximum class-wide damages, and an even higher percentage, approximately 20%, of Defendants' corresponding estimate, exceeding most securities class action settlements.  This level of recovery is above the norm is securities class actions and supports approval of the Settlement. Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA ECONOMIC CONSULTING at 19 (Jan. 25, 2021), https://www.nera.com/ content/dam/nera/publications/2021/PUB_2020_Full-Year_Trends_012221.pdf   (in   securities class actions involving total investor losses of $20 million to $50 million, the median recovery in settlements from 2012 to 2020 was 5.2% of estimated losses); *see also In re Canadian Superior Sec. Litig.*, No. 09 Civ. 10087 (SAS), 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) (approving a settlement representing 8.5% of maximum damages, which the court noted "exceed[s] the average recovery in shareholder litigation"); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that average settlements "have ranged from 3% to 7% of the class members' estimated losses"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving a recovery of approximately 6.25%, which was "at the higher end of the range of reasonableness").

Moreover, it is respectfully submitted that the fact that $6,000,000 Settlement was negotiated following arm's-length negotiations with the assistance of a highly experienced mediator, also strongly confirms that the Settlement is reasonable in light of the maximum

realistically recoverable damages in this action.  *See infra*, §II.B.; *see also* Schwartz Decl., ¶¶39-44.

### 6.      The Ability of Defendants to Withstand a Greater Judgment

Courts also consider a defendant's ability to withstand a judgment greater than that secured by the settlement, *Grinnell*, 495 F.2d at 463, particularly where the "greater judgment would put the defendant at risk of bankruptcy or other severe economic hardship."  *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006).  Here, while Defendants maintained insurance, since the time Lead Plaintiff filed the SAC, Teligent has been in danger of bankruptcy and possesses limited assets.  *See* Teligent, Inc., Form 10-Q (Aug. 16, 2021) (noting that the Company is "not currently generating revenues from operations that are sufficient to cover our operating expenses, and our available capital resources are not sufficient for us to continue to meet our obligations as they become due, presenting substantial doubt as to our ability to continue as a going concern."); Teligent, Inc., Exhibit 99.1, attached to Form 8-K (May 4, 2021) (noting the Company recorded $79.8 million of impairment charges in the fourth quarter and warning of "unprofitable U.S. operations, the uncertainty regarding the timing of the FDA lifting of the warning letter and other factors" impacting the "recoverability" of Teligent's "Buena plant as well as various intangible assets").  Therefore, Teligent's ability to withstand a greater judgment – and at an undetermined point in the future – supports a Settlement at this amount ($6 million) at this point in time.  *See In re Prudential Sec., Inc.*, No. MDL No. 1005, M-21-67 (MP), 1995 WL 798907, at *14 (S.D.N.Y. Nov. 20, 1995) (finding that "[t]he possibility [] exists that the PSI Settling Defendants might be unable to satisfy a judgment in the action" and that "[b]y entering into the Settlement Agreement and obtaining the payment of the Settlement funds . . . the risk of nonpayment in the event of a judgment was eliminated.").

### 7.      The Costs and Delays of Continued Litigation Support Approval of the Settlement

The time and costs involved in continuing to litigate this case through completion of fact and expert discovery, class certification briefing, summary judgment, trial and the inevitable post-

trial motions and appeals would have been substantial.  That is especially so here, as it is widely recognized that "[s]ecurities class actions are generally complex and expensive to prosecute."  *In re Gilat Satellite Networks*, *Ltd*., No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007).

The Settlement offers the opportunity to provide immediate relief to the Class, rather than a speculative payment years down the road, that would entail much greater costs regardless of whether that payment is ultimately larger or smaller than the present one, and that could be negatively impacted by Teligent's solvency concerns.  *See AOL Time Warner*, 2006 WL 903236, at *13 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

### D.   All Other Rule 23(e)(2)(C) Factors, Including the Equitable Treatment of Class Members Relative to Each Other, Also Support Approval

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of:

> The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  These factors further support approving the Settlement.

First, Lead Plaintiff proposes to follow well-established procedures for processing Class Members' claims and distributing the Net Settlement Fund to valid claimants.  More specifically, the net Settlement proceeds will be distributed to eligible class members who timely and validly submit required Claim Forms and supporting documentation to the Court-appointed Claims Administrator, Kroll Settlement Administration ("Kroll"), a highly experienced claims administration firm Kroll will: (a) review and process submitted claims under the supervision of Lead Counsel; (b) provide claimants with an opportunity to cure any deficiencies and bring any unresolved claims disputes to the Court; and (c) ultimately send claimants their *pro rata* share of

the Net Settlement Fund (following entry of a final "Distribution Order" by the Court).[5]  Schwartz Decl., ¶¶64-66; Hughes Decl., ¶¶4-11.  This type of claims processing is standard in securities class actions, as neither Lead Plaintiff nor Defendants possess individual investors' trading data that would otherwise allow the parties to create a "claims-free" process to distribute Settlement funds.

Additionally, as set forth in Section III below, the Plan of Allocation that Kroll will be applying to claims treats all Class members equitably, based on the amount and timing of their transactions in Teligent common stock, by awarding valid Claimants a recovery from the Net Settlement Fund based on their *pro rata* share of the total losses from all valid claims.  This means that Lead Plaintiff and all of the other Class Members who submit valid claims will receive precisely the same kind of *pro rata* recovery, calculated under the same Plan of Allocation provisions.

Second, the relief provided the Class under the Settlement is also adequate when the terms of the proposed attorney's fee award is considered.  As discussed in the accompanying Fee and Expense Memo, the proposed attorneys' fees of 33 and 1/3% of the Settlement Fund is regularly awarded in similar cases, and is fair and reasonable in light of Lead Counsel's results achieved in the face of substantial litigation risk, and the considerable amount of work required to achieve the results.  Indeed, the percentage fee requested reflects a ***discount*** from Lead Counsel's total lodestar – as it is a negative lodestar multiplier of 0.92 – and Lead Counsel has represented the Class on a contingent basis and has not received any payment to date.  Moreover, the Settlement is in no way dependent on the approval of attorneys' fees, which are subject to separate approval by the Court. *See* Stipulation, ¶14.c.

Third, courts should consider the fairness of a proposed settlement in light of any other agreements required to be identified under Rule 23(e)(3).  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).  As

---

[5]     The Settlement is not a claims-made settlement.  If the Settlement is approved, Defendants will have no right to the return of any portion of Settlement based on the number or amount of Claims submitted.  *See* Stipulation and Agreement of Settlement and Release ("Stipulation"), ¶13.m (ECF No. 82-1).

disclosed in moving for preliminary approval, the parties have entered into a standard supplemental agreement which provides that in the event Class Members with a certain aggregate amount of Recognized Claims opt out of the Settlement, Teligent shall have the option to terminate the Stipulation.  As is customary, the parties have kept that supplemental agreement confidential in order to prevent potential opt-opts from seeking to gain undue leverage.  *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-06728 (CM), 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (confidential supplemental agreements "[are] a standard provision in securities class actions and [have] no negative impact on the fairness of the Settlement.").  The parties are prepared to provide that supplemental agreement to the Court upon request, and for the foregoing reasons would respectfully request that, in that event, it remain confidential.

### E.    The Reaction of the Settlement Class to the Settlement

The reaction of the Class also supports final approval of Settlement.  Kroll has mailed out 10,175 copies of the Court-approved Notice and Proof of Claim (collectively, the "Claim Package") to potential Class Members and nominees.  *See* Hughes Decl., ¶11.  On August 19, 2021, Kroll also published the Summary Notice in *Business Wire* and in *The Wall Street Journal*. *Id.*, ¶12.  Further, Kroll has made all relevant documents and deadlines publicly available on a case-specific website, www.TeligentSecuritiesSettlement.com.  *Id.*, ¶14.

As noted above, although Class Members have until October 22, 2021 to object to or exclude themselves from the Settlement, to date no Class member has done so, which indicates that the Class supports the Settlement.  *In re Sadia S.A. Sec. Litig.*, No. 08 CIV. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011) (finding that "the class has reacted favorably to the settlement" where "no objections and only four exclusions" received); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at *7 (S.D.N.Y. July 31, 2008) ("This absence of dissent combined with the minimal number of exclusions militates strongly in favor of the Court's final approval of the Settlement.").[6]

---

[6]    Lead Counsel will address any objections in their reply memorandum, which will be filed on or before November 5, 2021, in accordance with this Court's Preliminary Approval Order.

In sum, each of the above factors fully supports a finding that the Settlement is fair, reasonable, and adequate, and Lead Plaintiff respectfully requests that the Court approve the Settlement a such.

### III.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate.  *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012).  A plan of allocation satisfies that standard so long as it has a "rational basis." *Signet Jewelers*, 2020 WL 4196468, at *13; *FLAG Telecom*, 2010 WL 4537550, at *21.  Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable.  *See Signet*, 2020 WL 4196468, at *13.  In assessing the foregoing factors, "courts give great weight to the opinion of experienced counsel."  *Id.*; *In re Am. Bank Note Holographics, Inc. Secs. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

Here, the proposed Plan of Allocation was developed by Lead Counsel in consultation with Lead Plaintiff's damages consultant, and was set forth in the Notice mailed to potential Settlement Class Members.  *See* Hughes Decl., Ex. A; *see also* Schwartz Decl., ¶¶64-67.  The Net Settlement Fund – which deducts attorneys' fees and expenses approved by the Court, notice and administration costs, and any taxes – will be distributed to authorized Claimants (Class members who submit timely and valid Proof of Claims) on a *pro rata* basis in accordance with the Plan of Allocation.  If there is sufficient money left in the Net Settlement Fund from unclaimed payments after the initial distribution, Kroll will make successive distributions under the same methodology as long as it is economically feasible to do so.  *Id.*

The recovery of individual Class Members under the Plan of Allocation will depend on: the aggregate value of the Recognized Claims from valid Proofs of Claim submitted by Class Members; when the Class Member's shares were purchased or acquired and the price at the time of purchase; and whether the shares were sold, and if so, when they were sold and for how much. *Id.*  The Plan of Allocation will use this information to determine, in the same manner, the size of

each Authorized Claimant's Recognized Claim and the *pro rata* share of the Net Settlement Fund that they will receive. *Id.* Thus, Lead Plaintiff respectfully submits that the Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms.

## VI.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE CLASS

In granting preliminary settlement approval, the Court preliminarily certified the Class for settlement purposes. As set forth in Lead Plaintiff's Preliminary Approval papers, the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are readily satisfied here. Mem. of Law in Supp. of Unopposed Mot. for Prelim. Approval of Settlement at 20-22 (ECF No. 81). Nothing has occurred that would alter the Court's conclusion since then. Therefore, for the same reasons that the Court preliminarily certified the Class, it should finally certify the Class for settlement purposes.

## V.    THE NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice to the Settlement Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa*, 396 F.3d at 114.

Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfied these standards. The Court-approved Notice includes all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. §78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) an explanation of the reasons why the parties are proposing the Settlement; (vi) a

statement indicating the attorneys' fees and costs that will be sought; (vii) a description of Settlement Class Members' right to opt-out of the Settlement Class or to object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members.  Note that, as set forth in the Notice, Class Members' deadline for submitting Proofs of Claims is December 7, 2021.

As noted above, in accordance with the Court's Preliminary Approval Order, the Court-approved Claims Administrator, Kroll, began mailing copies of the Claim Packages to potential Class Members on August 9, 2021.  *See* Hughes Decl., ¶¶5-6.  As of October 7, 2021, Kroll had disseminated 10,175 copies of the Claim Packages to potential Settlement Class Members and nominees.  *See id.*, ¶11.  In addition, on August 19, 2021, Kroll caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire*.  *See id.*, ¶12.  Copies of the Notice, Proof of Claim, and Stipulation were also made available on the settlement website maintained by Kroll beginning on August 9, 2021.  *See id.*, ¶14.  This combination of individual mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on the website, was, as courts regularly find in similar circumstances, "the best notice . . . practicable under the circumstances" and satisfies all relevant requirements.  Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Qudian Inc. Sec. Litig.*, No. 17-cv-09741-JFK, 2021 WL 2383550, at *3 (S.D.N.Y. June 8, 2021); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-04846, 2021 WL 345790, at *4 (E.D.N.Y. Feb. 1, 2021); *In re Advanced Battery Techs.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014).

## VI.    CONCLUSION

For the reasons set forth above and in the Schwartz Decl., Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, approve the Plan of Allocation, and grant final certification of the Class.

DATED:  October 7, 2021                          Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
By: */s/ Max R. Schwartz*
Max R. Schwartz

Jeffrey P. Jacobson
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
mschwartz@scott-scott.com
jjacobson@scott-scott.com

*Counsel for Lead Plaintiff Oklahoma Police
Pension and Retirement System*

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on October 7, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

                                 */s/ Max R. Schwartz*
                                   Max R. Schwartz

21