**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA POLICE PENSION FUND AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 1:19-cv-03354-VM |
| v. | |
| TELIGENT, INC. and JASON GRENFELL-GARDNER, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF COSTS AND EXPENSES**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   THE COURT SHOULD AWARD ATTORNEYS' FEES USING THE
PERCENTAGE METHOD ....................................................................................... 3

    A.    The Common Fund Doctrine Assesses the Beneficiaries of the Fund with the
Costs of Its Creation ..................................................................................... 3

    B.    The Requested Fee of 33 and 1/3% of the Common Fund Is Reasonable ............... 5

          1.    The *Goldberger* Factors Demonstrate That the Requested Fee Is
Reasonable Under the Percentage-of-the-Fund Method ............................... 5

                a.    The Time and Labor Expended by Lead Counsel Support the
Requested Fee ..................................................................................... 6

                b.    The Risks of the Litigation Support the Requested Fee ..................... 8

                c.    The Magnitude and Complexity of the Action Support the
Requested Fee ..................................................................................... 9

                d.    The Quality of Lead Counsel's Representation Supports the
Requested Fee ................................................................................... 10

                e.    The Requested Fee in Relation to the Settlement Further
Supports Fee Approval ..................................................................... 10

                f.    Public Policy Considerations Support the Requested Fee ................. 11

          2.    The Result Obtained and the Class' Reaction Also Support the
Requested Fee ............................................................................................ 12

                a.    The Settlement Is an Excellent Result for the Class .......................... 12

                b.    The Reaction of the Class Favors the Fee Request ........................... 13

          3.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar
Method ...................................................................................................... 13

III.  LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND
SHOULD BE REIMBURSED .............................................................................. 15

IV.  LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS
AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)................................................ 17

V.    CONCLUSION ..................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)............................................................................................................3, 11

*Beaver v. Tarsadia Hotels*,
  No. 11-CV-01842, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017)...........................................6

*Blum v. Stenson*,
  465 U.S. 886 (1984).................................................................................................................6

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).............................................................................................................3, 4

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631 (CM), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................12

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)....................................................................................................8

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)............................2, 5, 9

*Cornwell v. Credit Suisse Grp.*,
  No. 08-cv-03758 (VM), 2011 WL 13263367 (S.D.N.Y. July 20, 2011)................................14

*Fogarazzo v. Lehman Bros.*,
  No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .............................5, 6, 9

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................................3, 5, 13

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...........................2, 5

*Hart v. BHH, LLC*,
  No. 15cv4804, 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020)...............................................16

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)....................4, 11, 17

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*,
  272 F. App'x 9 (2d Cir. 2008) ...............................................................................................10

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................9

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.,*
772 F.3d 125 (2d Cir. 2014) ...............................................................................18

*In re IMAX Sec. Litig.,*
No. 06 CIV. 6128 (NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ...........4, 13

*In re China Sunergy Sec. Litig.,*
No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...............15

*In re Comverse Tech., Inc. Sec. Litig.,*
No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ....... *passim*

*In re Constellation Energy Grp. Inc. Sec. Litig.,*
No. 1:08-cv-02854, 2013 WL 12461134 (D. Md. Nov. 4, 2013) ...........................6

*In re Corel Corp. Inc. Sec. Litig.,*
293 F. Supp. 2d 484 (E.D. Pa. 2003) ....................................................................6

*In re Deutsche Telekom AG Sec. Litig.,*
No. 00-CV-9475 (NRB), 2005 WL 7984326 (S.D.N.Y. June 14, 2005) ...............14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ...............................................................4, 15

*In re Facebook, Inc. IPO Sec. & Derivative Litig.,*
No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ...........................5

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.,*
No. 02-CV-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........... *passim*

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................5

*In re Hi-Crush Partners L.P. Sec. Litig.,*
No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...............13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...............18

*In re Marsh ERISA Litig.,*
265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................9

*In re Sadia S.A. Sec. Litig.,*
No. 08 Civ. 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ...............13

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008)................................13

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................10, 18

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)..............................................................................................................4

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................................11, 14

*Martin v. Caterpillar Inc.*,
No. 07-CV-1009, 2010 WL 11614985 (C.D. Ill. Sept. 10, 2010) ...........................................6

*Missouri v. Jenkins*,
491 U.S. 274 (1989)........................................................................................................6, 13

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999)..................................................................................................3

*Silverstein v. AllianceBernstein, L.P.*,
No. 09-CV-5904 JPO, 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013)...................................16

*Singh v. 21Vianet Grp., Inc.*,
No. 2:14-CV-00894, 2018 WL 6427721 (E.D. Tex. Dec. 7, 2018) ........................................6

*Solis v. Orthonet LLC*,
No. 19-CV-4678 (VSB), 2021 WL 2678651 (S.D.N.Y. June 30, 2021)..................................5

*Tellabs, Inc. v. Makor Issues & Rts, Ltd.*,
551 U.S. 308 (2007)........................................................................................................3, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ................................................................................................4, 14

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
No. 14-CV-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).............................14

**Statutes, Rules, and Regulations**

15 U.S.C.
§78U-4(a)(4) ................................................................................................................17, 18

## I.     INTRODUCTION

Through its representation of Lead Plaintiff Oklahoma Police Pension and Retirement System ("Oklahoma Police" or "Lead Plaintiff") and the Class, Scott+Scott Attorneys at Law LLP ("Lead Counsel") has obtained an all-cash, non-reversionary settlement of $6,000,000 for the benefit of the Class in this action alleging violations of §§10(b) and 20(a) the Exchange Act of 1934 (the "Action").   Lead Counsel has prosecuted this case on a wholly contingent basis, including providing the costs necessary to litigate the Class' claims and now respectfully moves for a fee award and reimbursement of expenses.

As detailed below, in the Final Approval Memorandum submitted herewith, and in the accompanying Declaration of Max R. Schwartz (the "Schwartz Decl."), this Settlement represents a highly favorable recovery for the Class in view of the amount of the recovery, the potential damages, the complexity of the Action, and the risks, costs, and duration of continued litigation. Lead Counsel vigorously investigated and prosecuted this Action on behalf of the Class, as described below, and overcame repeated attempts by Defendants to dismiss the Action, to limit discovery, and to attack Lead Plaintiff and the relevant claims.   It also participated in two rounds of mediation, and extensive follow-up negotiations, which involved detailed and updated submissions that narrowed the issues in the case.   This resulted in Lead Counsel securing a recovery of 15% of Lead Plaintiff's estimated maximum class-wide damages, and an even higher percentage, approximately 20%, of Defendants' corresponding estimate, exceeding most securities class action settlements.

To obtain this significant result, Lead Counsel and their paraprofessionals spent more than 3,000 hours prosecuting this Action, resulting in a lodestar of $2,180,102.50.   Lead Counsel respectfully requests a fee award of 33 and 1/3%.   This request is fair and reasonable under the applicable standards and is well-within the range of fees awarded by Courts in this Circuit in

similar cases.  For example, the court in *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) awarded 33 and 1/3% attorneys' fees to lead counsel in a securities fraud action in which the parties settled for $7.5 million, noting that the award "is consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries."

Lead Counsel's fee request is also fair and reasonable given that it would result in a negative multiplier of approximately 0.92 – that is, it would be less than the lodestar Lead Counsel incurred in securing this substantial recovery for the Class.  By contrast, courts routinely award positive multipliers of counsel's lodestar following the successful resolution of a case.  *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.").[1]

Further, Lead Counsel seeks reimbursement of $166,028.45 in costs incurred that were reasonable and necessary to prosecute the litigation.  As further detailed below, the costs covered customary expenses, including: electronic discovery, legal research, mediation, court reporters, and filing, witness, and related fees.  In addition, the largest costs were for experts, who performed work in connection with class certification, with the mediation and the plan of allocation, and with the investigation of liability issues.  Courts regularly approve similar requests for reimbursement. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM), 2014 WL 1883494, at *6, *20 (S.D.N.Y. May 9, 2014).

---

[1]     Unless otherwise noted, citations are omitted and emphasis is added.

Lead Plaintiff supports these requests, and the Class has reacted favorably to them as well. The Court-ordered Notice programs informed Class members of the fee and reimbursement requests that Lead Counsel would make, and although the deadline for exclusions and objections has not yet passed, to date none have been submitted.

Also, Lead Plaintiff respectfully requests reimbursement for the time and expense that its staff devoted to representing the Class in this Action, in the amount of $6,857. The diligent work from Lead Plaintiff was necessary for the Class to receive this significant recovery. Again, the notice program informed Class Members that Lead Plaintiff would seek reimbursement of potentially a larger amount, and there have been no objections.

Accordingly, for their diligent efforts, and for the reasons set forth herein, Lead Plaintiff and Lead Counsel respectfully request that the Court grant this Motion in full.

## II.   THE COURT SHOULD AWARD ATTORNEYS' FEES USING THE PERCENTAGE METHOD

### A.   The Common Fund Doctrine Assesses the Beneficiaries of the Fund with the Costs of Its Creation

Where, as here, litigation has created a common fund for the benefit of the named plaintiff as well as others, courts may award plaintiffs' counsel their reasonable attorneys' fees and expenses out of the fund created. As the Supreme Court explained, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchs. Bank*, 166 F.3d 456, 459-60 (2d Cir. 1999).

Moreover, the Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rts, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill*

*Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'") (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).   Compensating plaintiffs' counsel for bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."   *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

Additionally, though "[c]ourts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage-of-the-fund' method," *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), the U.S. Supreme Court has consistently held that where a common fund has been created for the benefit of a class owing to counsel's efforts, the fee award should be determined on a percentage-of-the-fund basis.   *See, e.g.*, *Boeing*, 444 U.S. at 478-79.   Courts in this Circuit also widely accept the percentage approach for awarding fees in common fund cases.   *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. 2018); *In re IMAX Sec. Litig.*, No. 06 CIV. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012).   As such, courts often consider the "lodestar" method as a "cross check" on the reasonableness of counsel's requested percentage.   *Id.*; *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010).

Lead Counsel respectfully submits that an award should be made on a percentage basis here, and also submits its "lodestar" as further evidence of the reasonableness of its requested percentage.

**B.     The Requested Fee of 33 and 1/3% of the Common Fund Is Reasonable**

Here, the requested fee award — 33 and 1/3% of the Settlement Amount and a negative lodestar multiplier of 0.92 — is well supported under both the "percentage" and "lodestar" methods.

**1.     The *Goldberger* Factors Demonstrate That the Requested Fee Is Reasonable Under the Percentage-of-the-Fund Method**

In assessing the reasonableness of a fee request, Courts in this Circuit typically consider the following factors, known as the *Goldberger* Factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d at 50.  As detailed below, these factors demonstrate that the fee requested by Lead Counsel is reasonable.

The 33 and 1/3% attorney fee requested by Lead Counsel is also well within the range of percentage fees that have been awarded in this Circuit in comparable class actions.  *See, e.g., Guevoura Fund*, 2019 WL 6889901, at *18, *21 (awarding 33 and 1/3% of $7.5 million settlement fund; negative multiplier)*; Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33 and 1/3% of $6.75 million settlement; negative multiplier); *see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *9-*10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement fund; 1.02 multiplier); *Aeropostale, Inc.*, 2014 WL 1883494, at *13, *20 (awarding 33% of $15 million settlement; negative multiplier); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (negative multiplier); *Solis v. Orthonet LLC*, No. 19-CV-4678 (VSB), 2021 WL 2678651, at *2 (S.D.N.Y. June 30, 2021) (in approving 33% fee in Fair Labor Standards Act case, noting that "'[c]ourts in this Circuit typically approve attorneys' fees

that range between 30% and 33%.'").  In fact, courts find that "where the total award computed

under the percentage method is significantly less than the lodestar figure, a higher percentage may

be warranted."  *Lehman Bros.*, 2011 WL 671745, at *3-*4.  The requested fee is supported by

awards that have been granted in comparable securities class actions in other Circuits as well.  *See*,

*e.g.*, *Singh v. 21Vianet Grp., Inc.*, No. 2:14-CV-00894, 2018 WL 6427721, at *2 (E.D. Tex. Dec.

7, 2018) (awarding 33 1/3% of the $9 million settlement); *In re Corel Corp. Inc. Sec. Litig.*, 293

F. Supp. 2d 484, 497 (E.D. Pa. 2003) (awarding 33 1/3% of $7 million settlement).[2]  Further, the

Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate

what counsel would receive if they were bargaining for the services in the marketplace, and that

in a non-representative action, the customary fee arrangement would be contingent, on a

percentage basis, and typically in the range of one-third of the recovery.  *See Missouri v. Jenkins*,

491 U.S. 274, 285-86 (1989); *Blum v. Stenson*, 465 U.S. 886, 903 (1984).

> **a.      The Time and Labor Expended by Lead Counsel Support the Requested Fee**

The substantial time and effort expended by Lead Counsel in prosecuting the Action and

achieving the Settlement support the requested fee.  The accompanying Schwartz Decl. (at ¶¶22,

72-73) sets forth Lead Counsel's efforts in prosecuting the claims over the course of over two

years of hard-fought litigation.   As further detailed therein, Lead Counsel's numerous tasks

throughout the various stages of the Action included, among other things:

- Investigation: filing multiple Freedom of Information Act ("FOIA") requests with the FDA and communicating with the FDA regarding the requests; reviewing and analyzing the representations made by the Company in SEC filings, healthcare

---

[2]      *See also Beaver v. Tarsadia Hotels*, No. 11-CV-01842, 2017 WL 4310707, at *17 (S.D. Cal. Sept. 28, 2017) (awarding 33 and 1/3% fee of $17.05 million settlement); *In re Constellation Energy Grp. Inc. Sec. Litig.*, No. 1:08-cv-02854, 2013 WL 12461134, at *1 (D. Md. Nov. 4, 2013) (awarding 33 and 1/3% fee of $4 million settlement); *see also Martin v. Caterpillar Inc.*, No. 07-CV-1009, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010) ("[C]ourts in the Seventh Circuit award attorney fees equal to approximately one-third or more of the recovery.").

presentations, on conference calls, and in press releases before, during, and after the Class Period regarding the Company's compliance with federal FDA regulations; reviewing and analyzing securities analyst reports and comprehensive news reports, press releases, and other media files concerning Teligent; and consulting with an FDA expert regarding the FDA's 483 observations and the impact they had on Teligent's ability to obtain FDA approval of its products.

- <u>Complaints and Motions to Dismiss</u>: reviewing, analyzing, researching, and filing multiple detailed amended complaints; responding to two rounds of letter briefing on Defendants' proposed motion to dismiss, and prevailing in substantial part thereon.

- <u>Discovery</u>: issuing document requests to Defendants, and undertaking extensive negotiations with the goal to ensure that they undertook a satisfactory search and production of documents; reviewing almost 15,000 internal documents produced by Defendants, Defendants' class certification experts, and a third-party in discovery; responding to the requests for production and interrogatories that Defendants served on Lead Plaintiff, reviewing and producing documents on behalf of Lead Plaintiff; and defending the depositions of Lead Plaintiff as well as Lead Plaintiff's class certification expert.

- <u>Class Certification</u>: preparing and filing Lead Plaintiff's opening motion for class certification; and retaining and consulting with a class certification expert in connection therewith.

- <u>Mediation and Settlement</u>: preparing for and participating in multiple mediation sessions with Robert A. Meyer, including a day-long session on October 2, 2020 and a half-day session on April 5, 2021; submitting a detailed mediation statement, and other mediation papers throughout that time which substantially narrowed the relevant issues, and participating in follow-up negotiations with the Mediator culminating in the Settlement; and preparing the Settlement and preliminary approval papers, the final approval papers, and overseeing the notice and claims process.

As noted above and in the Declaration of Daryl F. Scott on behalf of Scott+Scott Attorneys at Law LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Scott+Scott Decl."), Lead Counsel expended 3,077.4 hours prosecuting this Action with a lodestar value of $2,180,102.50.  ¶4.  Throughout the litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  The time and effort devoted to this case by Lead Counsel was critical in obtaining the favorable result achieved by the Settlement, and confirms that the fee request here is reasonable.

### b.  The Risks of the Litigation Support the Requested Fee

The Second Circuit has recognized that the risks in a case counsel undertakes on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  "'Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.'" *Comverse*, 2010 WL 2653354, at *5.

While Lead Counsel believe that the claims here are meritorious, the ability to win at class certification, summary judgment, trial, a likely appeal and obtain a greater judgment than provided by the Settlement was far from certain.  As discussed in greater detail in the Schwartz Decl. (at ¶¶51-63) and in the Final Approval Memo (at 8-12), there were substantial risks here with respect to establishing both liability and damages.  For example, with respect to falsity: Defendants strongly maintained that they did not make any untrue or misleading statements, that the challenged statements are accurate statements of fact, inactionable puffery or opinions and that sophisticated investors would have understood them as such, and that the Second Amended Complaint ("SAC") mischaracterizes the 483 observations and related correspondence.  For similar reasons, Defendants argued that Lead Plaintiff could not prove scienter.  Further, even if Lead Plaintiff established liability, Defendants advanced reliance, causation, and damages arguments that if successful would have drastically reduced the Class' ability to recover damages, or eliminated them entirely.  Given these and other risks, along with Defendants' commitment to advocating their position and the complexity of the claims, a resolution was never assured in this Action, and certainly not a quick or substantial one.

8

Thus, the contingent nature of Lead Counsel's representation, especially under the foregoing circumstances, support the percentage fee requested.  *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").  It is also notable that, unlike many class actions where risk is spread and expenses are shared by several firms working on a case, Scott+Scott investigated, filed, and prosecuted this case by itself, and bore the entire risk of non-payment by itself.

### c. The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the requested fee.  Courts have recognized that securities class action litigation is "notably difficult and notoriously uncertain." *FLAG Telecom*, 2010 WL 4537550, at *27; *see also Aeropostale, Inc.*, 2014 WL 1883494, at *16 ("the complex and multifaceted subject matter involved in a securities class action such as this supports the fee request"); *Lehman Bros.*, 2011 WL 671745, at *3 ("in general, securities actions are highly complex").  This case was certainly no exception, especially given the complex federal FDA regulations at the heart of the case, new questions raised by Defendants on reliance and class certification citing recent Supreme Court decisions, and difficult disputes on causation and damages that were addressed in depth during the mediation process.  Thus, this factor also supports the fee requested.

>    **d.    The Quality of Lead Counsel's Representation Supports the Requested Fee**

The skill and experience of Lead Counsel support the requested fee award as well. Scott+Scott has achieved repeated outstanding results for investors, including in securities class actions, over many years of litigating complex cases. Scott+Scott Decl., Ex. C. The skill and experience of its attorneys enabled it to obtain those results, along with the outstanding recovery here. *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) ("In this case, the quality of the representation of Plaintiffs' Counsel is best evidenced by the result.").

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Experienced and skilled counsel from White & Case LLP and then Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., two prominent law firms with a well-deserved reputation for vigorous advocacy, represented Defendants here. In the face of such opposition, Lead Counsel built a case that was sufficiently strong to persuade Defendants to settle for an amount that Lead Counsel submits is highly favorable to the Class, including in comparison to similar cases. This also weighs strongly in favor of the requested fee.

>    **e.    The Requested Fee in Relation to the Settlement Further Supports Fee Approval**

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees

10

awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in detail above (at §II.B), courts in this and other Circuits regularly award fees of 33 and 1/3 percent in similar cases, and the requested fee is accordingly well within the range of reasonable and standard range.

### f.      Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. As the Supreme Court has instructed, such actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs,* 551 U.S. at 313; *see also Berner*, 472 U.S. at 310 (such actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'"). Compensating plaintiffs' counsel for the risks they take in bringing securities class actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks,* 2005 WL 2757792, at *9.

Accordingly, public policy also favors granting the requested fee here. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").

2.      **The Result Obtained and the Class' Reaction Also Support the Requested Fee**

Not only do each of the *Goldberger* factors support an award of 33 and 1/3% attorneys' fees, but two additional factors that Courts often consider – the result obtained and the reaction of the Class – also lend further support for the requested fee amount.

a.      **The Settlement Is an Excellent Result for the Class**

Courts routinely consider the result for the Class achieved when assessing the quality of representation and whether to approve the requested attorneys' fees. *E.g., Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM), 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) ("One marker of the quality of representation the Class received is the quality of the result obtained.").

Here, the $6,000,000 cash settlement obtained owing to the efforts of Lead Counsel and Lead Plaintiff is a substantial recovery. As discussed in the Schwartz Decl. (at ¶5) and the Final Approval Memo (at 2), it also this represents 15% of Lead Plaintiff's estimated maximum class-wide damages, and an even higher percentage, approximately 20%, of Defendants' corresponding estimate, exceeding most securities class action settlements. *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA ECONOMIC CONSULTING, Jan. 25, 2021, https://www.nera.com/content/dam/nera/publications/2021/PUB_2020_Full-Year_Trends_012221.pdf, at 19 (in securities class actions involving $20 million to $50 million, the median recovery in settlements from 2012 to 2020 was 5.2% of estimated losses).

The high-quality of the Settlement is also demonstrated by the significant obstacles that Lead Counsel overcame in order to achieve it, including Defendants' attempts to dismiss the case, the complexity of the claims, and the considerable risks and costs that further litigation would have entailed. Final Approval Memo at §II.

12

### b.      The Reaction of the Class Favors the Fee Request

While the October 22, 2021 deadline for objecting to Lead Counsel's fee and expenses has not passed, to date, Lead Counsel are not aware of a single Class Member who has objected to any aspect of the fee and expense request or opted-out of the Class.  *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011) (finding that "the class has reacted favorably to the settlement" where "no objections and only four exclusions" received); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 WL 2944620, at *7 (S.D.N.Y. July 31, 2008) ("This absence of dissent combined with the minimal number of exclusions militates strongly in favor of the Court's final approval of the Settlement.").[3]  Similarly, Lead Plaintiff supports the fee request as well.

### 3.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, district courts may cross-check the proposed award against counsel's lodestar.  *Goldberger*, 209 F.3d at 50; *IMAX*, 2012 WL 3133476, at *5; *Converse*, 2010 WL 2653354, at *2.

Here, Lead Counsel spent a total of 3,077.4 hours of attorney and other professional support time prosecuting the Action for the benefit of the Class.  Scott+Scott Decl., ¶4.  Lead Counsel's lodestar, calculated by multiplying the hours spent by each attorney and paraprofessional by their current hourly rates, is $2,180,102.50.[4]  *See id.*  The requested fee of $1,998,000 (before interest),

---

[3]      Lead Counsel will address any objections in their reply memorandum, which will be filed on or before November 5, 2021, in accordance with this Court's Preliminary Approval Order.

[4]      The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest.  *See Jenkins*, 491 U.S. at 284; *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation.").

therefore represents a multiplier of 0.92 of the total lodestar.  This is a ***negative*** multiplier (or a multiplier of less than one) meaning that, if awarded, the requested fee will represent a discount on Lead Counsel's total lodestar, notwithstanding the excellent result they achieved for the Class.

This multiplier is significantly below the range of multipliers commonly awarded in securities class actions and other comparable litigations.  Indeed, in cases of this nature, fees representing multiples ***above*** the lodestar — or positive multipliers — are regularly awarded to reflect the contingency fee risk and other relevant factors.  *See FLAG Telecom*, 2010 WL 4537550, at *26 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"); *Comverse*, 2010 WL 2653354, at *5 ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

In particular, in complex contingent litigation, positive lodestar multipliers between two and five are commonly awarded.  *See, e.g.*, *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier); *Comverse*, 2010 WL 2653354, at *5 (2.78 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (3.96 multiplier); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

Further, should the Court approve the Settlement, Lead Counsel and Lead Plaintiff will continue to work on behalf of the Class, including supervising the claims process, answering shareholder calls and, if necessary, litigating appeals.  That work is not taken into account in Lead Counsel's current lodestar, but also merits consideration when assessing the reasonableness of Lead Counsel's fee request, especially given the existence of a negative lodestar multiplier.

A fee representing a negative lodestar multiplier, as requested here, is therefore eminently reasonable.

## III.  LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED

As with fees, attorneys who create a common fund for the benefit of a class are entitled to payment from the fund of reasonable litigation expenses.  *See Facebook IPO*, 343 F. Supp. 3d at 418 (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation"); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (same); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

Here, there is no question that the expenses at issue were reasonable expenditures necessary to prosecute the Action.

For example, of the total amount of expenses, $131,531.90, or approximately 79%, was expended on experts and consultants.  To that point, Lead Counsel retained an expert who evaluated Lead Plaintiff's motion for class certification effort and mediation efforts by performing an analysis on class-wide reliance, recoverable damages, class-wide damages methodology, and developing the Plan of Allocation.  Lead Counsel also retained an FDA expert, who aided in Lead

Counsel's investigation into the 483 observations the FDA issued to Defendants, as well as the subsequent correspondence between the FDA and Defendants.  All of this work was critical to the overall prosecution of the Action.

A significant amount of document discovery was taken in the case as well.  Lead Counsel therefore seeks $12,857.46 (approximately 8% of total expenses) relating to litigation support services, such as the costs associated with electronic discovery.

Expenses totaling $2,005 (nearly 1.2% of total expenses) were also incurred in connection with court reporting and the two depositions (Oklahoma Police's representative and damages expert) taken in this Action.

Mediation fees were an additional $10,993 (almost 7% of total expenses).

The total amount of these expenses is $166,028.45.  This was accrued over two years, and the largest category of expenses was on expert consultants who worked with Lead Counsel on damages, liability, and the Plan of Allocation.

Courts in this Circuit routinely grant requests for reimbursement of similar expenses incurred litigating an action on behalf of a class.  *See Hart v. BHH, LLC*, No. 15cv4804, 2020 WL 5645984, at *11 (S.D.N.Y. Sept. 22, 2020) ("When the lion's share of expenses reflects the typical costs of complex litigation such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses, courts should not depart from the common practice in this Circuit of granting expense requests."); *see also Silverstein v. AllianceBernstein, L.P.*, No. 09-CV-5904 JPO, 2013 WL 7122612, at *10 (S.D.N.Y. Dec. 20, 2013) (granting counsel's request for reimbursement of "court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, data storage, fees for deposition reporters and transcripts, and

Plaintiffs' share of the mediator's fees," all of which were "incidental and necessary to the representation of the class").

Given that Lead Counsel has borne these necessary costs, and the risk of non-payment, to date, it respectfully submits that reimbursement for them is fair and reasonable.

## IV. LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78U-4(A)(4)

Lead Plaintiff also seeks a total of $6,857 in PSLRA awards to reimburse costs and expenses incurred by it directly relating to its representation of the Settlement Class. *See* Schwartz Decl., ¶12 and Oklahoma Police Decl., ¶15. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

The reimbursement request here represents the cost to Lead Plaintiff, a public pension fund, that its staff devoted to prosecuting the Action. Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks*, 2005 WL 2757792, at *10.

As set forth in the Oklahoma Police Decl., Lead Plaintiff actively and effectively fulfilled its duties on behalf of the Class. Among other things, Lead Plaintiff: (i) participated in numerous discussions with Lead Counsel about the prosecution of the case and the strengths of the claims; (ii) reviewed significant pleadings and briefs; (iii) participated in discovery, including time-consuming efforts to locate and produce documents responsive to Defendants' discovery requests; (iv) prepared and sat for a deposition; and (v) was involved in mediation efforts and approving settlement strategies. *See* Oklahoma Police Decl., ¶¶4-9.

These efforts are the very types of activities that courts routinely find to support PSLRA §78u-4(a)(4) awards to class representatives. *See, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs to compensate them for time spent supervising the litigation, as their efforts reflected "precisely the types of activities" that merited §78u-4(a)(4) awards); *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *FLAG Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to Lead Plaintiff for time spent on the litigation); *Veeco*, 2007 WL 4115808, at *12 (awarding institutional lead plaintiff $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).

Lead Plaintiff respectfully submits that the Court should therefore grant its request here, and notes that its request is less than amounts that are routinely granted in other cases.

## V.      CONCLUSION

For the foregoing reasons, Lead Counsel respectfully submits that the motion for an award of attorneys' fees and expenses, and the reimbursement to Lead Plaintiff, is fair, reasonable, and appropriate under the circumstances of this case, and should be granted in full.

DATED:  October 7, 2021                    Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
By:  */s/ Max R. Schwartz*
Max R. Schwartz
Jeffrey P. Jacobson
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
mschwartz@scott-scott.com

jjacobson@scott-scott.com

*Counsel for Lead Plaintiff Oklahoma Police Pension and Retirement System*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

<u>  /s/ Max R. Schwartz                 </u>
Max R. Schwartz

20