# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| OKLAHOMA POLICE PENSION FUND AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>TELIGENT, INC. and JASON GRENFELL-GARDNER,<br><br>     Defendants. | Case No. 1:19-cv-03354-VM |

## DECLARATION OF JUSTIN R. HUGHES REGARDING NOTICE DISSEMINATION, PUBLICATION, AND REQUESTS FOR EXCLUSION RECEIVED TO DATE

I, JUSTIN R. HUGHES, hereby declare as follows:

1.     I am employed as a Senior Director by Kroll Settlement Administration ("Kroll"), located at 2000 Market St., Suite 2700, Philadelphia, PA 19103. The following statements are based on my personal knowledge and information provided to me by other Kroll employees and, if called to testify, I could and would do so competently.

2.     Pursuant to this Court's July 20, 2021 Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), Kroll was appointed to supervise and administer the notice procedure, as well as the processing of claims in connection with the proposed Settlement of the above-captioned action (the "Action").[1]  I oversaw the notice services that Kroll provided in accordance with the Preliminary Approval Order.

3.     I submit this declaration in order to provide the Court and the parties to the Action with information regarding: (i) mailing of the Court-approved Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and Proof of Claim and Release form (the "Proof of Claim") (collectively, the "Claim Package," attached hereto as Exhibit A); (ii) publication of the Summary Notice of Proposed Settlement of Class Action ("Summary Notice"); (iii) establishment of the website and toll-free telephone number dedicated to this settlement; and (iv) an update regarding requests for exclusion from and objections to the Settlement Class, received by Kroll to date.

### DISSEMINATION OF THE CLAIM PACKAGE

4.     Kroll is responsible for disseminating the Claim Package to potential Class Members in this Action.  By definition, Class Members are all Persons that purchased or otherwise acquired Teligent publicly traded common stock between March 7, 2017 in the aftermarket and November 6, 2017 at the close of regular trading, both dates inclusive, and who were damaged thereby.  Excluded from the Class are any Excluded Person and immediate family member of any

---

[1]     Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation"), dated July 14, 2021 (ECF No. 82-1).

1

Excluded Person; the legal representatives, heirs, successors, or assigns of any Excluded Person; and any entity in which any Excluded Person has a controlling interest. Also excluded will be any person who validly requests exclusion from the Class.

5.     On August 9, 2021, Kroll mailed 381 Claim Packages, via First-Class Mail, postage prepaid, to a list of names and addresses of potential Settlement Class Members that Defendants had provided to Kroll.

6.     That same day, Kroll mailed, via First-Class Mail, 1,654 Claim Packages to brokerages, custodial banks, and other institutions ("Nominee Holders") that hold securities in "street name" as nominees for the benefit of their customers who are the beneficial owners of the securities. The Nominee Holders also include a group of filers/institutions who have requested notification of previous securities cases. These Nominee Holders are included in a proprietary database created and maintained by Kroll. In Kroll's experience, the Nominee Holders included in this proprietary database represent a significant majority of the beneficial holders of securities. In the four decades that Kroll has been providing notice and claims administration services in securities class actions, Kroll has found the majority of potential class members hold their securities in street name and are notified through the Nominee Holders.

7.     Additionally, on August 9, 2021, Kroll emailed the Nominee Holders to notify them of the pendency of this Action as a class action (for settlement purposes) and proposed Settlement, and informed each entity of its obligation to either provide the names and addresses of its customers and clients who may be Class Members, or request copies of the Claim Package to provide directly to its customers and clients who may be Class Members. Thereafter, Kroll mailed, via First-Class Mail, postage prepaid, to 2,350 potential Class Members identified by Nominee Holders and sent 5,790 Claim Packages directly to the Nominee Holders that indicated that they would directly forward the documents to their customers and clients who may be Class Members.

8.     All names and addresses obtained by Kroll were reviewed to identify and eliminate exact duplicates and incomplete data prior to mailing. Addresses were checked against the USPS's National Change of Address database to identify address changes and obtain current mailing

addresses where available. In addition, Kroll received 263 Claim Packages returned by the USPS with an undeliverable address.  Through credit-bureau and/or other public-source databases, Kroll performed address searches for these undeliverable Claim Packages and was able to find updated addresses for 21 Settlement Class Members. Kroll is currently in the process of re-mailing these Claim Packages to the updated addresses.

9.      As part of the notice program for this Settlement, on August 9, 2021, Kroll also delivered electronic copies of the Claim Package, via email, to be published by the Depository Trust Company ("DTC") on the DTC Legal Notice System ("LENS").  LENS enables the participating bank and broker nominees to review the Claim Package and contact Kroll for copies of the Claim Package for their beneficial holders.

10.     On August 31, 2021, Kroll emailed the Nominee Holders a second time to remind them of the pendency of this Action as a class action (for settlement purposes) and proposed Settlement, and reminded each entity of its obligation to either provide the names and addresses of its customers and clients who may be Class Members, or request copies of the Claim Package to provide directly to its customers and clients who may be Class Members.  Additionally, on September 7, 2021, Kroll sent a further reminder postcard to Nominee Holders to inform them of this obligation.

11.     As of October 7, 2021, Kroll has mailed a total of 10,175 Claim Packages to potential Settlement Class Members and nominees.  As set forth in the Claim Package, Summary Notice, and website, Class Members have until December 7, 2021 to return their Proofs of Claims.

## PUBLICATION OF THE SUMMARY NOTICE

12.     In accordance with the Preliminary Approval Order, on August 19, 2021, Kroll caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire*, as shown in the confirmations of publication, attached hereto as Exhibit B.

## TELEPHONE HELPLINE AND WEBSITE

13.     On August 9, 2021, Kroll established and continues to maintain a case-specific, toll-free telephone helpline (1-833-460-1725) to accommodate potential Settlement Class Member

3

inquiries.  The toll-free number was set forth in the Claim Package and Summary Notice and is posted on the settlement website for the Action.  Kroll has been and will continue to promptly respond to all inquiries to the toll-free telephone helpline.

14.     On August 9, 2021, Kroll established and continues to maintain a website dedicated to this Settlement (www.TeligentSecuritiesSettlement.com) to provide additional information to Settlement Class Members and to provide answers to frequently asked questions.  The web address was set forth in the Claim Package and the Summary Notice.  The website includes information regarding the Action and the Settlement, including the exclusion, objection, and claim-filing deadlines, and the date, time, and location of the Court's Settlement Hearing.  Copies of the Notice, Proof of Claim, Stipulation of Settlement, and Preliminary Approval Order are posted on the website and are available for downloading.  Settlement Class Members can also complete and submit a Proof of Claim through the website.

## EXCLUSION REQUESTS & OBJECTIONS

15.     The Notice informs potential Settlement Class Members that written requests for exclusion from the Settlement Class must be mailed to Teligent Securities Settlement, Claims Administrator, Kroll Settlement Administration, Attn: EXCLUSIONS, P.O. Box 5324, New York, New York 10150-5324, such that they are postmarked no later than October 22, 2021.

16.     The Notice also informs potential Settlement Class Members that requests for objection must be in writing and filed with the United States District Court for the Southern District of New York, by hand or by mail, such that it is received on or before October 22, 2021 and that the objector must also serve the papers on Lead Counsel and Defendants' Counsel such that they are received on or before October 22, 2021.  Should any potential Settlement Class Member erroneously forward his, her, or its request for objection to the Claims Administrator, the Claims Administrator will report them to Lead Counsel and the Court.

17.     The Notice also sets forth the information that must be included in each request for exclusion and objection.  Kroll has monitored, and will continue to monitor, all mail delivered to

4

this address.  As of the date of this declaration, Kroll has not received any requests for exclusion, and has not received any objections from Settlement Class Members.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed in Oakland, California on October 7, 2021.

_____
JUSTIN R. HUGHES

5

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

*/s/ Max R. Schwartz*
Max R. Schwartz

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA POLICE PENSION FUND AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    v.<br><br>TELIGENT, INC. and JASON GRENFELL-GARDNER,<br><br>              Defendants. | Case No. 1:19-cv-03354-VM<br><br><br>**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION** |

**TO:    ALL PERSONS AND ENTITIES WHO PURCHASED OR ACQUIRED THE COMMON STOCK OF TELIGENT, INC. ("TELIGENT" OR THE "COMPANY") DURING THE PERIOD FROM MARCH 7, 2017 IN THE AFTERMARKET TO NOVEMBER 6, 2017 AT THE CLOSE OF REGULAR TRADING, INCLUSIVE[1] (THE "CLASS").**

**THIS NOTICE WAS AUTHORIZED BY THE COURT.  IT IS NOT A LAWYER SOLICITATION.  PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

**WHY SHOULD I READ THIS NOTICE?**

This Notice is given pursuant to an order issued by the United States District Court for the Southern District of New York (the "Court").  This Notice serves to inform you of the proposed settlement of the above class action lawsuit (the "Settlement") for $6,000,000 in cash, which Class Members may be eligible to participate in, and the hearing (the "Settlement Fairness Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, as set forth in the Stipulation of Settlement dated July 14, 2021 (the "Stipulation").  The Stipulation is by and between:  (i) Plaintiff Oklahoma Police Pension Fund and Retirement System ("Oklahoma Police" or "Plaintiff"), on behalf of itself and each of the Class Members, by and through its counsel of record; and (ii) Defendants Teligent and Jason Grenfell-Gardner, by and through their respective counsel of record in the above-captioned action (the "Action").  Upon and subject to the terms and conditions hereof, Plaintiff, on behalf of itself and the Class, on the one hand, and each of the Defendants, on the other hand (collectively, "Settling Parties"), intend this Settlement to be a final and complete resolution of all disputes between the Settling Parties with respect to the Action.  This Notice is not an expression of any opinion by the Court as to the merits of the claims or defenses asserted in the lawsuit.

---

[1]    All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated July 14, 2021 (the "Stipulation"), which is available on the website for the Action at www.teligentsecuritiessettlement.com.

1

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **ACTIONS YOU MAY PURSUE** | **EFFECT OF TAKING THIS ACTION** |
| **SUBMIT A PROOF OF CLAIM FORM NO LATER THAN DECEMBER 7, 2021.** | The only way to get a payment. |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION POSTMARKED NO LATER THAN OCTOBER 22, 2021.** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against the Defendants and their Related Persons relating to this case. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION RECEIVED NO LATER THAN OCTOBER 22, 2021.** | Write to the Court about why you don't like the Settlement. |
| **ATTEND A HEARING ON NOVEMBER 12, 2021 AT 10:30 A.M.** | Speak in Court about the fairness of the Settlement. |
| **DO NOTHING.** | Get no payment. Give up your rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made to Authorized Claimants, in accordance with the Plan of Allocation set forth below, if the Court approves the Settlement and, if there are any appeals, after the appeals are resolved. Please be patient.

**WHAT IS THIS LAWSUIT ABOUT?**

**The Allegations and Status of the Case**

Teligent is a pharmaceutical company that develops generic products. On December 9, 2019, Oklahoma Police filed the Second Amended Class Action Complaint for Violations of Federal Securities Laws ("Complaint"), alleging that, between March 7, 2017 and November 6, 2017 (the "Class Period"), Defendants stated that the Company had not received any Form 483 observations from the U.S. Food and Drug Administration ("FDA"). The Complaint further alleges that this was false and misleading, as in the months before March 2017 the FDA had issued a 483 Letter to Teligent and had related correspondence with Teligent regarding it. A Form 483 observation informs a company that the FDA observed potential violations of federal regulations and instructs the company to remedy those violations. As a result of responding to the FDA, and the underlying issues, the Complaint alleges that Teligent's pipeline of new products, along with its ability to develop new products and win FDA approval for them, were harmed. In turn, the Complaint alleges that when Teligent announced poor performance at the end of the Class Period, which was the alleged materialization of the risk from the undisclosed 483 correspondence with the FDA, its stock price dropped substantially, injuring investors who purchased or acquired Teligent stock during the Class Period. This Action alleges that, based on the foregoing circumstances, Defendants violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

On January 15, 2020, Defendants served Plaintiff a pre-motion to dismiss letter setting forth their arguments for dismissing the Complaint in full. Both Plaintiff and Defendants served follow-up letters, further addressing those arguments, and then, on June 17, 2020, the Court issued an Order converting Defendants' pre-motion to dismiss letters into a motion to dismiss, which it denied in part and granted in part. On August 17, 2020, Defendants filed an answer to the SAC, denying all of the SAC's allegations, and asserted defenses thereto. To this date, Defendants continue to deny all of the allegations and maintain that the Complaint has no merit.

Plaintiff moved for class certification on September 30, 2020 and Defendants filed a memorandum of law in opposition thereto on April 2, 2021. The Action settled before that motion was decided. Concurrently, from the Summer of 2020 through the Spring of 2021, the Parties engaged in discovery. This included all Parties making multiple document productions, document productions from a third-party, and the deposition of Plaintiff and an expert that submitted a report in support of Plaintiff's class certification motion.

The parties agreed to attend a mediation session conducted by a third-party neutral mediator, Robert A. Meyer, Esq. ("the Mediator"). Plaintiff and Defendants submitted and exchanged mediation statements summarizing their respective positions. The mediation session was held on October 2, 2020. While the parties did not reach an agreement to settle the Action at the mediation, they continued their negotiations through the Mediator. On April 5, 2021, the parties engaged in another mediation session, for half of a day. Again, the parties did not reach an agreement. However, the parties significantly narrowed the outstanding issues and several weeks later agreed to settle the Action for $6,000,000 in cash.

**THE COURT HAS NOT RULED AS TO WHETHER DEFENDANTS ARE LIABLE TO PLAINTIFF OR THE CLASS. THIS NOTICE IS NOT INTENDED TO BE AN EXPRESSION OF ANY OPINION BY THE COURT WITH RESPECT TO THE TRUTH OF THE ALLEGATIONS IN THIS LAWSUIT OR THE MERITS OF THE CLAIMS OR DEFENSES ASSERTED. THIS NOTICE IS SOLELY TO ADVISE YOU OF THE PENDENCY OF THE ACTION AND PROPOSED SETTLEMENT THEREOF AND YOUR RIGHTS IN CONNECTION WITH THAT SETTLEMENT.**

**HOW DO I KNOW IF I AM A CLASS MEMBER?**

If you purchased the common stock of Teligent, between March 7, 2017 in the aftermarket and November 6, 2017 at the close of regular trading, inclusive, you may be a Class Member. As set forth in the Stipulation, excluded from the Class are Defendants and the officers and directors of Teligent. Also excluded will be any person who validly requests exclusion from the Class.

If you are not sure if you are a Class Member, you can ask for free help. You can contact the Claims Administrator at 1-833-460-1725 or Jeffrey P. Jacobson, a representative of Plaintiff's Counsel, at 1-800-332-2259. You can also fill out and return the Proof of Claim enclosed with this Notice.

**PLEASE NOTE:** Receipt of this Notice does not mean that you are a Class Member or that you will be entitled to receive a payment from the Settlement. If you are a Class Member and you wish to be eligible to participate in the distribution of proceeds from the Settlement, you are required to submit the Poof of Claim that is being distributed with this Notice, as directed herein.

3

**WHAT IS THE MONETARY VALUE OF THE PROPOSED SETTLEMENT?**

The Settlement, if approved, will result in the creation of a cash settlement fund of $6,000,000 (the "Settlement Amount").  The Settlement Amount, plus accrued interest (the "Settlement Fund") and minus the costs of this Notice and all costs associated with the administration of the Settlement, as well as any attorneys' fees and expenses that may be approved by the Court (the "Net Settlement Fund"), will be distributed to Class Members pursuant to the Plan of Allocation that is described in the next section of this Notice.

Plaintiff estimates that the average recovery under the Settlement is roughly $0.39 per allegedly damaged share before notice and administration costs and the attorneys' fee and expense award as determined by the Court.  Should the Court award attorneys' fees of up to 33 and 1/3% of the Settlement Fund (or $1,998,000), Plaintiff's Counsel's expenses of up to $265,000, the time and expenses of Plaintiff of up to $15,000, and the estimated cost of notice and administration of the Settlement of approximately $175,000, the average per share recovery after those fees, expenses, and costs would be roughly $0.23 per allegedly damaged share.  These are just estimates. Additionally, a Class Member's actual recovery will be a *pro rata* proportion of the Net Settlement Fund determined by that claimant's recognized claim as compared to the total recognized claims submitted.  An individual Class Member may also receive more or less depending on the value of claims submitted by all Class Members, and on whether the individual's shares were held or sold, and, if sold, when they were sold and the amount received.  *See* the Plan of Allocation below for more information on how claims are calculated.

**WHAT IS THE PROPOSED PLAN OF ALLOCATION?**

Plaintiff's Counsel conferred with their damages consultant in developing the Plan of Allocation, which determines the amount that an Authorized Claimant may recover.  The calculation of claims is not an estimate of actual damages or the amount you will receive.  It is a formula for allocating the Net Settlement Fund among all Authorized Claimants.

A "Recognized Loss Amount" will be calculated as set forth for each purchase of Teligent common stock that is listed in the Claim Form and for which adequate documentation is provided. To the extent that the calculation of a Claimant's Recognized Loss Amount results in a negative number, that number shall be set to zero.

The sum of a Claimant's Recognized Loss Amounts will be the Claimant's "Recognized Claim."

**For each share of Teligent common stock purchased from the aftermarket close on March 7, 2017[2] through the close of regular market trading on November 6, 2017,[3] and:**

    A.      sold prior to 4:05 PM Eastern Time on November 6, 2017 (the date of the alleged corrective disclosure), the Recognized Loss Amount is zero;

    B.      sold from 4:05 PM Eastern Time on November 6, 2017 through February 2, 2018, the Recognized Loss Amount is **the lesser of**: (i) $2.20, the amount of artificial inflation per share; or (ii) the purchase price per share *minus* the average closing price between November 7, 2017 and the date of sale as stated in Table A below;

    C.      held at the close of trading on February 2, 2018, the Recognized Loss Amount is equal to **the lesser of:** (i) $2.20, the amount of artificial inflation per share; or (ii) the purchase price per share *minus* $3.59.[4]

---

[2] For purposes of this Plan of Allocation, the Claims Administrator will assume that any shares of Teligent common stock purchased/acquired or sold on March 7, 2017 at any price less than $6.75 per share occurred before the alleged misstatement was released to the market, and any shares of Teligent common stock purchased/acquired or sold on March 7, 2017 at any price equal to or greater than $6.75 per share occurred after the alleged misstatement was released to the market. If a Claimant provides documentation with the time stamp for the trade, any trade made prior to 4:01 PM Eastern Time on March 7, 2017 will be considered as having occurred before the alleged misstatement was released to the market, and any trade at or after 4:01 PM Eastern Time on March 7, 2017 will be considered to have occurred after the alleged misstatement was released to the market.

[3] For purposes of this Plan of Allocation, the Claims Administrator will assume that any shares of Teligent common stock purchased/acquired or sold on November 6, 2017 at any price equal to or greater than $4.99 per share occurred before the allegedly corrective information was disclosed to the market, and any shares of Teligent common stock purchased/acquired or sold on November 6, 2017 at any price less than $4.99 occurred after the allegedly corrective information was disclosed to the market. If a Claimant provides documentation with the time stamp for the trade, any trade made prior to 4:05 PM Eastern Time on November 6, 2017 will be considered as having occurred before the alleged corrective information was disclosed to the market, and any trade at or after 4:05 PM Eastern Time on November 6, 2017 will be considered to have occurred after the allegedly corrective information was disclosed to the market.

[4] Pursuant to Section 21(D)(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  The closing price on November 7, 2017, was the first closing price following the Class Period where there was no longer alleged artificial inflation in the Teligent common stock price.  The average (mean) closing price of Teligent common stock during the 90-day look-back period from November 7, 2017, through and including February 2, 2018, was $3.59.

**TABLE A**

**Teligent Common Stock Closing Price and Average Closing Price**
**November 7, 2017 – February 2, 2018[5]**

| Sale Date | Closing Price | Average Closing Price Between November 7, 2017 and Date Shown | Sale Date | Closing Price | Average Closing Price Between November 7, 2017 and Date Shown |
|---|---|---|---|---|---|
| 11/7/2017 | $2.96 | $2.96 | 12/20/2017 | $3.70 | $3.66 |
| 11/8/2017 | $2.97 | $2.97 | 12/21/2017 | $3.61 | $3.66 |
| 11/9/2017 | $3.12 | $3.02 | 12/22/2017 | $3.68 | $3.66 |
| 11/10/2017 | $3.74 | $3.20 | 12/26/2017 | $3.73 | $3.66 |
| 11/13/2017 | $3.48 | $3.25 | 12/27/2017 | $3.60 | $3.66 |
| 11/14/2017 | $3.51 | $3.30 | 12/28/2017 | $3.59 | $3.65 |
| 11/15/2017 | $3.36 | $3.31 | 12/29/2017 | $3.63 | $3.65 |
| 11/16/2017 | $3.51 | $3.33 | 1/2/2018 | $3.85 | $3.66 |
| 11/17/2017 | $3.59 | $3.36 | 1/3/2018 | $3.91 | $3.67 |
| 11/20/2017 | $3.38 | $3.36 | 1/4/2018 | $4.05 | $3.68 |
| 11/21/2017 | $3.32 | $3.36 | 1/5/2018 | $3.87 | $3.68 |
| 11/22/2017 | $3.66 | $3.38 | 1/8/2018 | $3.85 | $3.68 |
| 11/24/2017 | $3.85 | $3.42 | 1/9/2018 | $3.81 | $3.69 |
| 11/27/2017 | $3.70 | $3.44 | 1/10/2018 | $3.80 | $3.69 |
| 11/28/2017 | $3.73 | $3.46 | 1/11/2018 | $3.77 | $3.69 |
| 11/29/2017 | $3.76 | $3.48 | 1/12/2018 | $3.58 | $3.69 |
| 11/30/2017 | $4.02 | $3.51 | 1/16/2018 | $3.40 | $3.68 |
| 12/1/2017 | $3.98 | $3.54 | 1/17/2018 | $3.71 | $3.68 |
| 12/4/2017 | $3.73 | $3.55 | 1/18/2018 | $3.53 | $3.68 |
| 12/5/2017 | $3.77 | $3.56 | 1/19/2018 | $3.48 | $3.68 |
| 12/6/2017 | $3.71 | $3.56 | 1/22/2018 | $3.40 | $3.67 |
| 12/7/2017 | $3.75 | $3.57 | 1/23/2018 | $3.30 | $3.66 |
| 12/8/2017 | $3.82 | $3.58 | 1/24/2018 | $3.29 | $3.66 |
| 12/11/2017 | $4.07 | $3.60 | 1/25/2018 | $3.28 | $3.65 |
| 12/12/2017 | $3.94 | $3.62 | 1/26/2018 | $3.31 | $3.64 |
| 12/13/2017 | $3.89 | $3.63 | 1/29/2018 | $3.18 | $3.64 |
| 12/14/2017 | $3.85 | $3.64 | 1/30/2018 | $3.18 | $3.63 |
| 12/15/2017 | $3.92 | $3.65 | 1/31/2018 | $3.05 | $3.62 |
| 12/18/2017 | $3.81 | $3.65 | 2/1/2018 | $3.00 | $3.61 |
| 12/19/2017 | $3.75 | $3.66 | 2/2/2018 | $2.89 | $3.59 |

[5] The 89th and 90th calendar days of the 90-day lookback period were Saturday, February 3, 2018 and Sunday, February 4, 2018, which were not trading days. Therefore, Table A displays closing and average prices through Friday, February 2, 2018.

6

In the event a Class Member has more than one purchase or sale of Teligent common stock, all purchases and sales shall be matched on a First-In, First-Out ("FIFO") basis for purposes of calculating a claim. Under the FIFO method, sales will be matched first against any holdings at the close of regular market trading on March 7, 2017, and then in chronological order against Teligent common stock purchased between the aftermarket on March 7, 2017, and the close of regular trading on November 6, 2017, inclusive.

A purchase or sale of Teligent common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. All purchase and sale prices shall exclude any fees and commissions. The receipt or grant by gift, devise, or operation of law of Teligent common stock between March 7, 2017 in the aftermarket and November 6, 2017 at the close of regular trading, inclusive, shall not be deemed a purchase or sale of Teligent common stock for the calculation of a claimant's Recognized Claim nor shall it be deemed an assignment of any claim relating to the purchase of such shares unless (i) the donor or decedent purchased or otherwise acquired such Teligent common stock during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Teligent common stock; and (iii) it is specifically provided in the instrument of gift or assignment. The receipt of Teligent common stock between March 7, 2017, in the aftermarket and November 6, 2017, at the close of regular trading, inclusive, in exchange for securities of any other corporation or entity shall not be deemed a purchase or sale of Teligent common stock.

Payment according to the Plan of Allocation will be deemed conclusive against all Authorized Claimants. No Person shall have any claim against Plaintiff, Plaintiff's Counsel, any claims administrator, any other Person designated by Plaintiff's Counsel based on distributions made substantially in accordance with the Stipulation, the Plan of Allocation, or further orders of the Court; and no Person shall have any Claims against Defendants based on distributions of the Settlement Fund, whether or not made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

Covering purchases between March 7, 2017, in the aftermarket and November 6, 2017, at the close of regular trading, inclusive, for shares sold short prior to the class period will be excluded from the calculation of an Authorized Claimant's Recognized Claim. In the event that there is a short position in Teligent common stock, the date of covering a "short sale" is deemed to be the date of purchase of the stock. The date of a "short sale" is deemed to be the date of sale of the stock. The earliest purchases between March 7, 2017, in the aftermarket and November 6, 2017, at the close of regular trading, inclusive, shall be matched against such short position, and not be entitled to a recovery, until that short position is fully covered.

With respect to Teligent common stock purchased through the exercise of an option, the purchase date of the common stock is the exercise date of the option and the purchase price of the stock is the exercise price of the option. Any Recognized Claim arising from purchases of Teligent common stock acquired between March 7, 2017, in the aftermarket and November 6, 2017, at the close of regular trading, inclusive, through the exercise of an option on Teligent common stock shall be computed as provided for other purchases of Teligent common stock in the Plan of Allocation.

The Claims Administrator shall allocate to each Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants. No distribution shall be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

7

Class Members who do not submit Proofs of Claim that comply with the applicable instructions (as set forth in the Proof of Claim accompanying this Notice and summarized herein) will not share in the Settlement proceeds.  The Settlement and the Judgment issued in this Action will nevertheless bind Class Members who do not submit a request for exclusion and/or submit an acceptable Proof of Claim.

Please contact the Claims Administrator or Plaintiff's Counsel if you disagree with any determinations made by the Claims Administrator regarding your Proof of Claim.  If you are unsatisfied with the determinations, you may ask the Court, which retains jurisdiction over all Class Members and the claims administration process, to decide the issue by submitting a written request.

Defendants, their respective counsel will have no responsibility or liability whatsoever for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation, or the payment of any claim.  Plaintiff and Plaintiff's Counsel, likewise, will have no liability for their reasonable efforts to execute, administer, and distribute the Settlement.

The Plan of Allocation set forth herein is the plan that is being proposed to the Court for its approval by Lead Plaintiff after consultation with their damages expert.  The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Settlement Class.  Any Orders regarding any modification of the Plan of Allocation will be posted on the Settlement website, www.teligentsecuritiessettlement.com.

Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.  If, after no more than six month any funds remain in the Net Settlement Fund by reason of un-cashed distribution checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund shall be used: to make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $10.00, after payment of the estimated costs, expenses, or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible.  These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be distributed to The Legal Aid Society.

**MUST I CONTACT PLAINTIFF'S COUNSEL IN ORDER TO PARTICIPATE IN DISTRIBUTION OF THE SETTLEMENT FUND?**

No.  If you have received this Notice and timely submit your Proof of Claim to the address designated on the Proof of Claim form accompanying this Notice, you need not contact Plaintiff's Counsel.  If you did not receive this Notice by mail but believe you should have, or if your address changes, please contact the Claims Administrator at:

*Teligent Securities Settlement*
Claims Administrator
P.O. Box 5324
New York, NY 10150-5324

1-833-460-1725
www.teligentsecuritiessettlement.com

**THERE WILL BE NO PAYMENTS IF THE STIPULATION IS TERMINATED**

The Stipulation may be terminated under several circumstances outlined in it. If the Stipulation is terminated, the Action will proceed as if the Stipulation had not been entered into.

**WHAT ARE THE REASONS FOR SETTLEMENT?**

The Court has not reached any decisions regarding the merits of the claims or defenses asserted in the Action. Instead, Plaintiff and Defendants have agreed to this Settlement, which was reached with the substantial assistance of Robert A. Meyer, Esq., a highly experienced mediator of complex class actions. In reaching the Settlement, the Settling Parties have avoided the cost, delay, and uncertainty of further litigation.

As in any litigation, Plaintiff and the Class would face an uncertain outcome if they did not agree to the Settlement. The Settling Parties expected that the case could continue for a lengthy period of time, delaying any possible recovery for the Class. Continuation of the case against Defendants could result in a judgment greater than this Settlement. Conversely, continuing the case could result in no recovery at all or a recovery that is less than the amount of the Settlement.

Plaintiff and Plaintiff's Counsel believe that this Settlement is fair and reasonable to the Members of the Class. They have reached this conclusion for several reasons. Specifically, if the Settlement is approved, the Class will receive a significant monetary recovery. Additionally, Plaintiff's Counsel believe that the significant and immediate benefits of the Settlement, when weighed against the significant risk, delay, and uncertainty of continued litigation, are an excellent result for the Class.

**WHO REPRESENTS THE CLASS?**

The law firm of Scott+Scott Attorneys at Law LLP represents you and other Class Members. These lawyers are called Plaintiff's Counsel. These lawyers will apply to the Court for payment of attorneys' fees and expenses from the Settlement Fund; you will not be otherwise charged for their work. If you want to be represented by your own lawyer, you may hire one at your own expense.

**HOW WILL THE PLAINTIFF'S LAWYERS BE PAID?**

Plaintiff's Counsel will file a motion for an award of attorneys' fees and expenses that will be considered at the Settlement Fairness Hearing. Plaintiff's Counsel will apply for an award not to exceed 33 and 1/3% of the Settlement Fund, plus payment of expenses incurred in connection with the Action in an amount not to exceed $265,000. In addition, Plaintiff may seek payment of up to $15,000 for its time and expenses incurred in representing the Class. Such sums as may be approved by the Court will be paid from the Settlement Fund. Class Members are not personally liable for any such fees or expenses.

The attorneys' fees and expenses requested will be the only payment to Plaintiff's Counsel for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis. Plaintiff's Counsel have committed significant time and expenses in litigating this case for the benefit of the Class. To date, Plaintiff's Counsel have not been paid for their services in conducting this Action on behalf of the Plaintiff and the Class, or for their expenses. The fees requested will compensate Plaintiff's Counsel for their work in achieving the

9

Settlement.  The Court will decide what constitutes a reasonable fee award and may award less than the amount requested by Plaintiff's Counsel.

**CAN I EXCLUDE MYSELF FROM THE SETTLEMENT?**

If you want to keep the right to sue or continue to sue Defendants on your own about the legal issues in this case, then you must take steps to get out of the Class.  This is called excluding yourself from, or "opting out" of, the Class.

To exclude yourself from the Class, you must send a letter by mail saying that you want to be excluded from the Class in the following action:  *OPPFRS v. Teligent, Inc.,* Case No. 1:19-cv-03354-VM, S.D.N.Y.  Be sure to include your name, address, e-mail address, telephone number, and sign the letter.  Exclusion requests must also state the date, price, and number of shares of Teligent common stock purchased.  (You must also maintain your transaction records as you may be requested to submit them at a later date.)  Your exclusion request must be ***postmarked no later than October 22, 2021*** and sent to the Claims Administrator at:

*Teligent Securities Settlement*
Claims Administrator
Attn: EXCLUSIONS
P.O. Box 5324
New York, NY 10150-5324

You cannot exclude yourself by phone or by e-mail.  If you make a proper request for exclusion, you will not receive a Settlement payment, and you cannot object to the Settlement.  If you make a proper request for exclusion, you will not be legally bound by anything that happens in this lawsuit.  If you wish to be excluded from the Settlement Class, submit a request for exclusion only and do not submit an objection to the Settlement.  If you do submit both a request for exclusion and an objection to the Settlement, your objection will be disregarded.

**CAN I OBJECT TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUESTED ATTORNEYS' FEES AND EXPENSES, AND/OR PAYMENT TO PLAINTIFF?**

Yes.  If you are a Class Member, you may object to the terms of the Settlement.  Whether or not you object to the terms of the Settlement, you may also object to the Plan of Allocation, requested attorneys' fees, costs, and expenses, and/or application for payment to Plaintiff for their time and expenses.  To object, you must write to the Court setting out your objection in the case known as *OPPRS v. Teligent, Inc.*, Case No. 1:19-cv-03354-VM (S.D.N.Y.), stating why you think the Court should not approve any part or all of the Settlement, the proposed Plan of Allocation, the requested attorneys' fees, costs, and expenses, and/or application for payment to Plaintiff for their time and expenses.  You must include your name, address, telephone number, and your signature; include documents sufficient to prove your membership in the Class, such as number of shares of Teligent common stock purchased or acquired, as well as the dates and prices of each such purchase or acquisition during the Class Period.  Your letter must also state the specific reasons why you object, including any legal or evidentiary support for your objection.  Your objection must state whether it applies only to you, to a specific subset of the Class, or to the entire Class.

Your objection must be filed with the United States District Court for the Southern District of New York by hand or by mail such that it is **received on or before October 22, 2021**, at the address set forth below.  You must also serve the papers on Lead Counsel and Defendants' Counsel at the addresses set forth below so that the papers are **received on or before October 22, 2021**.

10

| COURT: | LEAD COUNSEL: |
|---|---|
| CLERK OF THE COURT | SCOTT+SCOTT ATTORNEYS AT |
| United States District Court | LAW LLP |
| Southern District of New York | Jeffrey P. Jacobson |
| Daniel Patrick Moynihan United States | 230 Park Avenue, 17th Fl. |
| Courthouse | New York, NY 10169 |
| 500 Pearl Street | |
| New York, NY 10007 | |

**DEFENDANTS' COUNSEL:**

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
Jacob Hupart
666 Third Avenue
New York, NY 10017

Unless otherwise ordered by the Court, any Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will not be able to appear separately at the Settlement Hearing or to make any objection to the Settlement, the proposed Plan of Allocation, the application for attorneys' fees, costs, and expenses, and/or application for payment to Plaintiff for their time and expenses.

If you hire an attorney (at your own expense) to represent you for purpose of objecting, your attorney must serve a notice of appearance on counsel listed above and file it with the Court (at the addresses set out above) by no later than October 22, 2021.

**WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING MYSELF FROM THE SETTLEMENT?**

Objecting is telling the Court that you do not like something about the proposed Settlement, the Plan of Allocation, Plaintiff's Counsel's request for an award of attorneys' fees and expenses, or payment to Plaintiff for their time and expenses. You can object *only* if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class, or participate in the recovery. If you exclude yourself, you have no basis to object because the case no longer applies to you.

**HOW CAN I GET A PAYMENT?**

In order to qualify for a payment, you must timely submit a Proof of Claim. A Proof of Claim is enclosed with this Notice, and it may also be downloaded at www.teligentsecuritiessettlement.com, or you can request a Proof of Claim by contacting the Claims Administrator or Plaintiff's Counsel as set forth herein. Read the instructions carefully, fill out the Proof of Claim, include all the documents the form asks for, sign it, and mail it or submit it online so that it is *postmarked* **(if mailed) or** *received* **(if filed electronically) no later than December 7, 2021.** The Proof of Claim may be submitted online at www.teligentsecuritiessettlement.com, and the address for mailing the proof of claim is:

11

*Teligent Securities Settlement*
Claims Administrator
P.O. Box 5324
New York, NY 10150-5324

If you do not submit a valid Proof of Claim, you will not receive a payment from the Net Settlement Fund; however, unless you expressly exclude yourself from the Class as described above, you will still be bound in all other respects by the Settlement, the Judgment, and the releases contained in them.

**WHAT CLAIMS WILL BE RELEASED BY THE SETTLEMENT?**

Unless you exclude yourself, you are staying in the Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Defendants relating to securities claims involving the purchase of Teligent common stock at issue in this case. It also means that all of the Court's orders will apply to you and legally bind you and you will fully, finally, and forever release your Released Claims in this case against the Released Defendants' Parties.

"Released Claims" is defined in the Stipulation and generally means: any and all claims, debts, actions, causes of action, suits, dues, sums of money, accounts, liabilities, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, awards, extents, executions, and demands whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including without limitation the federal securities laws, any rules of any stock exchange, whether fixed or contingent, whether accrued or un-accrued, whether asserted or unasserted, whether liquidated or un-liquidated, whether at law or in equity, whether matured or unmatured, whether direct, indirect or consequential, whether class or individual in nature, whether suspected or unsuspected, and whether known claims or Unknown Claims (as defined below), which the Lead Plaintiff and the Class Members on behalf of themselves, their heirs, executors, representatives, administrators, predecessors, successors, assigns, officers and directors, any and all other persons they represent and any other person or entity claiming (now or in the future) through or on behalf of them, in their individual capacities and in their capacities as purchasers of Defendants' securities, ever had, now has or hereafter can, shall or may have, from the beginning of time through and including the present, whether in their own right or by assignment, transfer or grant from any other person, thing or entity that (i) have been asserted in this Action by the Plaintiff and Class Members, or any of them, against any of the Released Parties, or (ii) could have been asserted in any forum by the Plaintiff or Class Members, or any of them, against any of the Released Parties which arise out of, are based upon or relate to, directly or indirectly, the allegations, transactions, facts, statements, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint. Notwithstanding the above, this Settlement shall not release any claims in the action captioned *George Gonzales*, *Derivatively on Behalf of Nominal Defendant Teligent, Inc. v. Jason Grenfell-Gardner, Steven Koehler, Carole Ben-Maimon, John Celentano, Bhaskar Chaudhuri, James C. Gale,* and *Thomas J. Sabatino, Jr.*, Civil Action No. 1:20-cv-5448 (S.D.N.Y.). For the avoidance of doubt, "Released Claims" for all Class Members including Plaintiff does not, however, include claims to enforce the Settlement.

"Released Parties" means: (i) each Defendant, (ii) each of their respective family members (for individuals) and each of their direct or indirect parent entities, subsidiaries, related entities and affiliates, and (iii) for any of the entities listed in parts (i) or (ii), their respective past and

12

present general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, re-insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof, in their capacities as such.

The above description of the proposed Settlement is only a summary.  The complete terms are set forth in the Stipulation (including its exhibits), which may be obtained at www.teligentsecuritiessettlement.com, or by contacting Plaintiff's Counsel listed on Pages 9 and 12.  In the event of any inconsistency between this notice and the Stipulation, the terms of the Stipulation control.

**THE SETTLEMENT FAIRNESS HEARING**

The Court will hold a Settlement Fairness Hearing on November 12, 2021, at 10:30 a.m., before the Honorable Victor Marrero at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., New York, NY 10007-1312, for the purpose of determining whether: (1) the Settlement of the Action for $6,000,000 in cash should be approved by the Court as fair, reasonable, and adequate; (2) to award Plaintiff's Counsel attorneys' fees and expenses out of the Settlement Fund; (3) to pay Plaintiff for its time and expenses incurred in representing the Class; (4) the Plan of Allocation should be approved by the Court; and (5) to enter the final Judgment as provided under the Stipulation.  The Court may adjourn or continue the Settlement Fairness Hearing without further notice to Members of the Class.  If you want to attend the hearing, you should check with Plaintiff's Counsel or the settlement website beforehand to be sure that the date and/or time have not changed.

Any Class Member may appear at the Settlement Fairness Hearing and be heard on any of the foregoing matters.

**HOW DO I OBTAIN ADDITIONAL INFORMATION?**

This Notice contains only a summary of the terms of the proposed Settlement.  The records in this Action may be examined and copied at any time during regular office hours, and subject to customary copying fees, at the Clerk of the Southern District of New York.  In addition, all of the Settlement documents, including the Stipulation, this Notice, the Proof of Claim, and proposed Judgment may be obtained on the settlement website, www.teligentsecuritiessettlement.com, or by contacting the Claims Administrator at:

*Teligent Securities Settlement*
Claims Administrator
P.O. Box 5324
New York, NY 10150-5324


1-833-460-1725
info@teligentsecuritiessettlement.com

In addition, you may contact Jeffrey P. Jacobson at Scott+Scott Attorneys at Law LLP, 230 Park Ave., Fl. 17, New York, NY 10169, 1-800-332-2259, if you have any questions about the Action or the Settlement or want to obtain Settlement documents.

**DO NOT WRITE TO, OR TELEPHONE, THE COURT FOR INFORMATION**

13

**SPECIAL NOTICE TO BANKS, BROKERS, AND OTHER NOMINEES**

If you held any Teligent common stock, as a nominee for a beneficial owner, then, within ten (10) days after you receive this Notice, you must either:  (1) send a copy of this Notice by First-Class Mail to all such Persons; or (2) provide a list of the names and addresses of such Persons to the Claims Administrator:

*Teligent Securities Settlement*
Claims Administrator
P.O. Box 5324
New York, NY 10150-5324

info@teligentsecuritiessettlement.com

If you choose to mail the Notice and Proof of Claim yourself, you may obtain from the Claims Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding the Notice and which would not have been incurred but for the obligation to forward the Notice, upon submission of appropriate documentation to the Claims Administrator.

DATED: July 20, 2021                                     BY ORDER OF THE UNITED STATES
                                                         DISTRICT COURT FOR THE
                                                         SOUTHERN DISTRICT OF NEW YORK

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA POLICE PENSION FUND AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:19-cv-03354-VM |
| Plaintiff, | **PROOF OF CLAIM AND RELEASE** |
| v. | **EXHIBIT A-2** |
| TELIGENT, INC. and JASON GRENFELL-GARDNER, | |
| Defendants. | |

## I.    GENERAL INSTRUCTIONS[1]

1.       To recover as a Member of the Class based on your claims in the action entitled *Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, Civil Action No. 1:19-cv-03354-VM (S.D.N.Y.) (the "Action"), you must complete and, on page 4 of 4 hereof, sign this Proof of Claim and Release form ("Proof of Claim"). If you fail to submit a timely and properly addressed (as set forth in paragraph 3 below) Proof of Claim, your claim may be rejected and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement.

2.       Submission of this Proof of Claim, however, does not assure that you will share in the proceeds of the Settlement of the Action.

3.       **YOU MUST MAIL OR SUBMIT ONLINE YOUR COMPLETED AND SIGNED PROOF OF CLAIM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, NO LATER THAN DECEMBER 7, 2021, ADDRESSED AS FOLLOWS:**

*Teligent Securities Settlement*
Claims Administrator
P.O. Box 5324
New York, NY 10150-5324
Online Submissions: www.teligentsecuritiessettlement.com

If you are **NOT** a Member of the Class, as defined in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), **DO NOT** submit a Proof of Claim.

4.       If you are a Member of the Class and you do not timely request exclusion in response to the Notice, you are bound by the terms of any judgment entered in the Action, including the releases provided therein, **WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM**.

---

[1]       All capitalized terms used in this Proof of Claim that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated July 14, 2021 (the "Stipulation"), which is available on the website for the Action at www.teligentsecuritiessettlement.com.

## II.    CLAIMANT IDENTIFICATION

If you purchased or acquired Teligent, Inc. ("Teligent") common stock between March 7, 2017 in the aftermarket and November 6, 2017 at the close of regular trading, inclusive, use Part I of this form entitled "Claimant Identification" to list the claimant name, mailing address, and account information, if relevant (such as for a claim submitted on behalf of an IRA, Trust, or estate account). Please list the most current claimant or account name as you would like the information to appear on the check, if eligible for payment.  Please also provide a telephone number and/or e-mail address, as the Claims Administrator may need to contact you with questions about the claim submitted.  If your Claimant Identification information changes, please notify the Claims Administrator in writing at the address above.

If you are acting in a representative capacity on behalf of a Class Member (for example, as an executor, administrator, trustee, or other representative), you must submit evidence of your current authority to act on behalf of that Class Member.  Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents or other documents which provide you with the authority to submit the claim.  Please also indicate your representative capacity under your signature on page 4of 4 of this Proof of Claim.

NOTICE REGARDING ELECTRONIC FILES:  Certain claimants with large numbers of transactions may request to, or may be requested to, submit information regarding their transactions in electronic files.  If you have a large number of transactions and wish to file your claim electronically, you may obtain the required file layout at www.teligentsecuritiessettlement.com.

## III.    CLAIM FORM

Use Part II of this form entitled "Schedule of Transactions in Teligent Common Stock" to supply all required details of your transaction(s) in Teligent common stock.  If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

On the schedules, provide all of the requested information with respect to *all* of your purchases or acquisitions between March 7, 2017 in the aftermarket and November 6, 2017 at the close of regular trading, and *all* of your sales of Teligent common stock between March 7, 2017 in the aftermarket and February 2, 2018 at the close of regular trading, inclusive, whether such transactions resulted in a profit or a loss.  You must also provide all of the requested information with respect to *all* of the Teligent common stock you held at the close of trading on March 7, 2017 and at the close of trading on February 2, 2018 and the sum total of your purchases between November 7, 2018 and February 2, 2018.  Failure to report all such transactions may result in the rejection of your claim.

List each transaction separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.

The date of covering a "short sale" is deemed to be the date of purchase of Teligent common stock. The date of a "short sale" is deemed to be the date of sale of Teligent common stock.

Copies of broker confirmations or other documentation of your transactions in Teligent common stock should be attached to your claim.  If any such documents are not in your possession, please obtain a copy or equivalent documents from your broker because these documents are necessary to prove and process your claim.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

3 1 2 2 1 0 0 0 0 0 0 0 0

<table>
<tr><td>

MUST BE
POSTMARKED
(IF MAILED)
OR
RECEIVED
(IF SUBMITTED ONLINE)
NO LATER THAN
**DECEMBER 7, 2021**

</td><td>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*Oklahoma Police Pension Fund and Retirement
System v. Teligent, Inc.,*
Case No. 1:19-cv-03354-VM

**PROOF OF CLAIM AND RELEASE**

Please Type or Print -Use Blue or Black Ink Only

</td><td>

For Office Use Only

</td></tr>
</table>

PART I:       CLAIMANT IDENTIFICATION

Owner's Name

Owner's Name (cont'd)

Owner's Name (cont'd)

Record Owner's Name of (if different from Beneficial Owner's name above)

If this account is an UGMA, UTMA or IRA, please include "UGMA", "UTMA", or "IRA" in the "Last Name" box above (e.g., Jones IRA).

**Street Address:**

**Street Address:**

**City:**          **State:**     **Zip Code:**

**Foreign Province:**          **Foreign Postal Code:**

**Foreign Country:**

**Area Code Telephone No. (day)**          **Area Code Telephone No. (evening)**

**Account Number:**

**Email:**

**Check Appropriate Box:** ☐ Individual  ☐ Corporation  ☐ Joint Owners  ☐ IRA  ☐ Trust

☐ Other _____

**Social Security Number (for individuals)**   OR   **Employer Identification Number (for estates, trusts, corporations, etc.)**


31221


CF


Page 1 of 4

31221000000000

PART II: SCHEDULE OF TRANSACTIONS IN TELIGENT COMMON STOCK

Use this section to provide information on your holdings and trading of Teligent common stock during the requested time periods.  For all transactions and holdings listed, you must provide copies of stockbroker confirmation slips, stockbroker statements, or other documents evidencing your transactions.  If any such documents are not in your possession, please obtain a copy or equivalent documents from your broker because these documents are necessary to prove and process your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

A.   Number of shares of Teligent common stock held at the close of trading on March 7, 2017.  If none, write "zero": _____

B.   Purchases or acquisitions of Teligent common stock in the aftermarket on March 7, 2017 to the close of regular trading on February 2, 2018, inclusive:

| Trade Date Month Day Year | Number of Shares Purchased or Acquired | Purchase or Acquisition Price per Share | Total Price or Acquisition Price |
|---|---|---|---|
| 1.) ☐☐/☐☐/☐☐ | ☐☐☐☐☐☐☐ | $☐☐☐.☐☐☐ | $☐☐☐☐☐☐☐.☐☐ |
| 2.) ☐☐/☐☐/☐☐ | ☐☐☐☐☐☐☐ | $☐☐☐.☐☐☐ | $☐☐☐☐☐☐☐.☐☐ |
| 3.) ☐☐/☐☐/☐☐ | ☐☐☐☐☐☐☐ | $☐☐☐.☐☐☐ | $☐☐☐☐☐☐☐.☐☐ |
| 4.) ☐☐/☐☐/☐☐ | ☐☐☐☐☐☐☐ | $☐☐☐.☐☐☐ | $☐☐☐☐☐☐☐.☐☐ |

**IMPORTANT:**  If any purchase listed covered a "short sale," please mark Yes.  ☐  Yes

C.   Sales of Teligent common stock March 7, 2017 in the aftermarket to the close of trading on February 2, 2018, inclusive:

| Trade Date Month Day Year | Number of Shares Sold | Sale Price per Share | Total Sales Price |
|---|---|---|---|
| 1.) ☐☐/☐☐/☐☐ | ☐☐☐☐☐☐☐ | $☐☐☐.☐☐☐ | $☐☐☐☐☐☐☐.☐☐ |
| 2.) ☐☐/☐☐/☐☐ | ☐☐☐☐☐☐☐ | $☐☐☐.☐☐☐ | $☐☐☐☐☐☐☐.☐☐ |
| 3.) ☐☐/☐☐/☐☐ | ☐☐☐☐☐☐☐ | $☐☐☐.☐☐☐ | $☐☐☐☐☐☐☐.☐☐ |
| 4.) ☐☐/☐☐/☐☐ | ☐☐☐☐☐☐☐ | $☐☐☐.☐☐☐ | $☐☐☐☐☐☐☐.☐☐ |

D.   Number of shares of Teligent common stock held at the close of regular trading on February 2, 2018.  If none, write "zero": _____

If you require additional space, attach extra schedules in the same format as above.  Sign and print your name on each additional page.



**YOU MUST READ AND SIGN THE RELEASE ON PAGE 4 of 4.  FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

### IV.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

1.    I (We) submit this Claim Form under the terms of the Stipulation and Agreement of Settlement described in the Settlement Notice and available at www.teligentsecuritiessettlement.com.  I (We) also submit to the jurisdiction of the United States District Court, Southern District of New York, with respect to my (our) claim as a Class Member.

2.    I (We) further acknowledge that, upon the Effective Date of the Settlement, I (we) will be bound by and subject to the terms of any judgment that may be entered in the Action, including the release of the Released Claims as against the Released Parties.  I (We) agree to furnish additional information to the Claims Administrator to support this claim if requested to do so.  I (We) have not submitted any other claim covering the same purchases or sales of Teligent common stock during the relevant periods and know of no other person having done so on my (our) behalf.

### V.    RELEASE

1.    I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever settle, release, and discharge each and all of the Released Parties from each and all of the Released Claims as provided in the Stipulation.

2.    "Released Claims" means any and all claims, debts, actions, causes of action, suits, dues, sums of money, accounts, liabilities, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, awards, extents, executions, and demands whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including without limitation the federal securities laws, any rules of any stock exchange, whether fixed or contingent, whether accrued or un-accrued, whether asserted or unasserted, whether liquidated or un-liquidated, whether at law or in equity, whether matured or unmatured, whether direct, indirect or consequential, whether class or individual in nature, whether suspected or unsuspected, and whether known claims or Unknown Claims (as defined below), which the Plaintiff and the Class Members on behalf of themselves, their heirs, executors, representatives, administrators, predecessors, successors, assigns, officers and directors, any and all other persons they represent and any other person or entity claiming (now or in the future) through or on behalf of them, in their individual capacities and in their capacities as purchasers of Defendants' securities, ever had, now has or hereafter can, shall or may have, from the beginning of time through and including the present, whether in their own right or by assignment, transfer or grant from any other person, thing or entity that (i) have been asserted in this Action by the Plaintiff and Class Members, or any of them, against any of the Released Parties, or (ii) could have been asserted in any forum by the Plaintiff or Class Members, or any of them, against any of the Released Parties which arise out of, are based upon or relate to, directly or indirectly, the allegations, transactions, facts, statements, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint.  Notwithstanding the above, this Settlement shall not release any claims in the action captioned *George Gonzales, Derivatively on Behalf of Nominal Defendant Teligent, Inc. v. Jason Grenfell-Gardner, Steven Koehler, Carole Ben-Maimon, John Celentano, Bhaskar Chaudhuri, James C. Gale,* and *Thomas J. Sabatino, Jr.*, Civil Action No. 1:20-cv-5448 (S.D.N.Y.).  For the avoidance of doubt, "Released Claims" for all Class Members including Plaintiff does not, however, include claims to enforce the Settlement.








3122100000000

3.      "Released Parties" means (i) each Defendant, (ii) each of their respective family members (for individuals) and each of their direct or indirect parent entities, subsidiaries, related entities and affiliates, and (iii) for any of the entities listed in parts (i) or (ii), their respective past and present general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, re-insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof, in their capacities as such.

4.      This release shall be of no force or effect unless and until the Court approves the Stipulation and the Settlement becomes effective on the Effective Date.

5.      I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

6.      I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases and sales of Teligent common stock between March 7, 2017 in the aftermarket and November 6, 2017 at the close of regular trading, inclusive, and the number of shares of Teligent common stock held by me (us) at the close of trading on March 7, 2017 and on November 6, 2017.

I (we) declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed this _____ day of _____
                                                                                                (Month/Year)

_____                    _____
Signature of Claimant                                                              (Type or print name of Claimant)

_____                    _____
Signature of Joint Claimant, if any                                         (Type or print name of Joint Claimant, if any)

_____                    _____
Signature of person signing on behalf of Claimant            (Type or print name of person signing on behalf of Claimant)

  

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1.      Please sign the above release and declaration.

2.      Remember to attach copies of supporting documentation.

3.      Do not send originals of certificates or other documentation as they will not be returned.

4.      Keep a copy of your Proof of Claim and all supporting documentation for your records.

5.      If you desire an acknowledgment of receipt of your Proof of Claim, please send it Certified Mail, Return Receipt Requested.

6.      If you move, please send your new address to the address below.

**THIS PROOF OF CLAIM MUST BE SUBMITTED ONLINE OR, IF MAILED,
POSTMARKED NO LATER THAN DECEMBER 7, 2021, ADDRESSED AS FOLLOWS:**

*Teligent Securities Settlement*
Claims Administrator
P.O. Box 5324
New York, NY 10150-5324
www.teligentsecuritiessettlement.com

# Exhibit B

THE WALL STREET JOURNAL.

Thursday, August 19, 2021 | **B5**

## TECHNOLOGY

# Robot Trucks Have a Long Road Ahead

**Investors rush into startups but a path to commercial markets remains a challenge**

By Heather Somerville And Jennifer Smith



TuSimple safety driver Mickie Muller sits in the driver's seat as the truck is in autonomous mode.

On a recent scorching day on the outskirts of Tucson, Ariz., a tractor-trailer equipped with an autonomous-driving system from technology company **TuSimple** Holdings Inc. waited at a busy overpass until the light turned green and a voice came over the intercom in the cab: "intersection clear."

The steering wheel revolved and the truck turned left, rolling itself down a highway on-ramp while in the driver's seat veteran truck driver Mickie Muller watched closely, her hands poised over the wheel and feet near the floor pedals.

For TuSimple, it was a perfectly executed maneuver, one the company practiced repeatedly under mostly ideal conditions on a familiar route.

Days before and hundreds of miles away in Cupertino, Calif., a self-driving **PlusAI** Corp. big rig undertook an even more ambitious operation, merging onto Interstate 280 and into Bay Area rush hour.

The maneuvers on public roads, both short demonstrations with no commercial cargo on board, show the potential of a technology that has drawn billions of dollars of investment. But they show how far it has to go before it can operate safely without a human at the wheel, allowing semi trucks to haul themselves over busy interstate highways, through gnarly weather and routes lined with construction.

Most startups are pushing to achieve what is known as Level 4 automation, meaning the vehicle is capable of performing all driving functions under certain conditions. That would signal that the technology can be useful at a commercial scale, and the startups can start earning more meaningful revenue.

In the past four months, four prominent self-driving trucking companies collectively valued at about $26 billion, including TuSimple and Plus, rushed to tap public markets, leveraging the robust market for initial public offerings and the popularity of a vehicle known as a special-purpose acquisition company, or SPAC, in bids to raise large sums of money.

Investors poured roughly $5.7 billion into TuSimple, Plus, Embark Trucks Inc. and Aurora Innovation Inc. in the past year, according to an analysis by The Wall Street Journal. The shift to public markets adds greater scrutiny to these companies, and urgency to demonstrate that they can map a path into commercial markets.

There is a lot still to do: test-drive billions of miles, lobby regulators to permit trucks to run without drivers, and convince a skeptical freight-hauling industry to put autonomous technology to work in daily operations.

A successful commercial deployment would go a long way to building confidence in self-driving technology, which Silicon Valley has been developing for about 12 years but is still largely limited to small-scale pilot projects with drivers behind the wheel. Assuming the SPAC deals are completed, the four trucking companies will be armed with a combined $4.2 billion to tackle the challenge.

TuSimple, Plus, Embark and Aurora, each in a battle for customers and truck builders as partners, say they plan to launch commercial driverless trucking systems in the U.S.—without a human in the cab—in three years or less.

"Speed to market is definitely important," said Patrick Dillon, chief financial officer at TuSimple, which plans to start mass production of trucks with its self-driving system in 2024 through an agreement with truck manufacturer Navistar International Corp.

TuSimple is doing a small amount of commercial freight hauling for paying customers in semis outfitted with autonomous-driving technology, as it refines its real-world trucking capabilities. In February, Plus started providing some cargo haulers, including Amazon.com Inc., with a self-driving system with limited features.

Investors disappointed by development stumbles and missed deadlines among robotaxi companies are betting on a faster path to automation in trucking. Backers say they can cut labor costs, speed shipping times, improve road safety and reduce emissions and fuel costs by eliminating poor driving such as slamming the brakes.

---

## Rift Forms At Didi's Board

Continued from page B1

currently has no rules that require internet companies to obtain Chinese government approval for overseas listings; its regulators are in the process of changing that.

Messrs. Lau and Zhang had earlier advised Didi Chairman Will Cheng and President Jean Liu—who also sit on the eight-member board—against rushing to go public in the midst of China's regulatory crackdown on the business practices of internet-technology companies, the people familiar with the matter said. The South China Morning Post earlier reported that the Tencent and Alibaba executives advised Didi to defer its New York listing.

The fallout from Didi's IPO—and China's intensifying regulatory crackdown on internet-technology and other businesses—rippled across companies. Many Chinese tech startups were forced to reconsider their overseas IPO plans and global investors have become less eager to invest in companies from China.

Days after Didi's listing, China said it would tighten rules for companies seeking to sell shares abroad. A draft regulation requires tech companies with data from more than one million users to undergo cybersecurity reviews before pursuing foreign listings.

Alibaba and Tencent are facing their own regulatory issues and can ill afford further entanglements with Didi's problems. In April, Alibaba was slapped with a record $2.8 billion fine for anticompetitive behavior on its e-commerce marketplace. Various Tencent subsidiaries also faced punitive actions, although the company as a whole hasn't been the subject of major regulatory scrutiny. Shares of both companies have tumbled this year.

Before Didi's IPO, China's cyberspace regulator suggested the company postpone its share sale until it completed a data-security review, meant in part to ensure that private data from Didi's users wouldn't be shared outside the country.

It isn't known how much detail Didi executives shared with the company's board. Didi's IPO prospectus made several references to data security, but didn't mention the cyberspace administration's request for a review.

"The board is a venue to make strategic decisions and an IPO is a strategic decision. It would be unusual if the management has not discussed that in detail or has not passed on the guidance from a regulator for an IPO at the board," said Jamie Allen, secretary-general of the Asia Corporate Governance Association in Hong Kong.

Didi signaled to the cyberspace regulator that it would consider the request, but at the same time pressed ahead with the IPO. The company went public on the New York Stock Exchange on June 30—the eve of the Communist Party's centennial celebration—with little publicity.

After drawing Beijing's ire, Didi has been criticized in China by government officials, investors and entrepreneurs, who have called it two-faced.

Mr. Cheng, an Alibaba alumnus, started Didi in 2012 after a six-year stint at the e-commerce giant, which is based in Hangzhou. He couldn't obtain funding from his former employer because then-Chairman Jack Ma informally banned investing in startups founded by alumni, according to people familiar with the matter. The informal ban, designed to help Alibaba keep talent from leaving to start other companies, was later scrapped partly because Mr. Ma regretted missing out on Didi, the people said.

Filling the void, Tencent became one of Didi's earliest and most important backers. The social-media and gaming giant first invested $15 million in the company in 2013 and pitched in on several more fundraising rounds in the ensuing years, according to PitchBook data. Tencent owned 6.8% of Didi at the time of its IPO.

Alibaba backed Didi's former rival, Kuaidi. When Didi and Kuaidi engaged in a costly battle for market share in China between 2013 and 2015, their competition fueled tensions between Tencent and Alibaba, both of which were pushing for greater adoption of their mobile payment networks—WeChat Pay and Alipay—through ride-hailing services.

In 2015, Didi and Kuaidi merged. Alibaba became an investor in the combined company, Didi Chuxing, but its stake is much smaller than Tencent's and wasn't listed in Didi's listing prospectus. Both Tencent and Alibaba have various business dealings with Didi.

**Didi Global's American depositary receipts**



$17
16
15
14    IPO price
13
12
11
10
9
8

July 2021          Aug.

Source: FactSet

**Three-month stock performance**



10%
■ Alibaba
■ Tencent
-10
-20
-30

June 2021          Aug.

---

## Tencent Eyes Curbs For Minors

Continued from page B1

its exclusive licensing deals with label companies and halted a Tencent-led merger of two game-streaming platforms, saying that combining the two companies would hurt competition.

As Beijing widens its scrutiny, Tencent has further limited game time and spending limits for China's youth, and it has cracked down on minors misusing adult accounts. The company said minors accounted for a small percentage of its online game revenue, with players under the age of 16 accounting for only 2.6% of its gross game receipts in China during the second quarter.

"The government wants to foster a long-term, sustainable development of the internet industry," said Mr. Lau. "We should expect, in the near future, more regulations should be coming."

The company is being "very cautious" in opening its services to other companies' platforms because of complicated questions, he said, such as different platforms charging different fees from merchants. Those issues need to be discussed and resolved over time, he added.

---

**ADVERTISEMENT**

## The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

### ANNOUNCEMENTS

**NOTICE OF PUBLIC SALE**
CERTAIN ASSETS OF TOY OVERLORD INC. dba MEGALOPOLIS

Description of assets to be sold: The assets to be sold consist of certain of the tangible and intangible assets used in the business of Toy Overlord, Inc. dba Megalopolis, a Delaware corporation including remaining Inventory and general intangibles.
Location: Online and in-person at the Offices of Brian Testo Associates, LLC
By Order of Secured Creditor
UCC 9-610 Foreclosure Auction
**Date:** August 25, 2021 • **Time:** 1:00 PM PDT
Call or email request for more information
Brian Testo, Brian Testo Associates, LLC
4085 E. Thousand Oaks Blvd., #105,
Westlake Village, CA 91362
(818) 592-6592 x101, briantesto@gmail.com
**www.btesto.com**

**NOTICE OF PUBLIC SALE**
CERTAIN ASSETS OF PAUL EVANS, LLC

Description of assets to be sold:
The assets to be sold consist of certain of the tangible and intangible assets used in the business of Paul Evans, LLC including remaining Inventory and general intangibles.
Location: Online and in-person at the Offices of Brian Testo Associates, LLC
By Order of Secured Creditor
UCC 9-610 Foreclosure Auction
**Date:** August 25, 2021 • **Time:** 11:00AM PDT
Call or email request for more information
Brian Testo, Brian Testo Associates, LLC
4085 E. Thousand Oaks Blvd., #105,
Westlake Village, CA 91362
(818) 592-6592 x101, briantesto@gmail.com
**www.btesto.com**

### AUCTIONS

By Order of the US Bankruptcy Court,
Case #2:20-bk-21022-BR
**ONLINE PUBLIC AUCTION**
**Law Offices of Girardi Meese**
Furniture • Furnishings • Collectibles
Art • Wine • Office Equipment • Cadillac



100's of Lots!

**Auction Closes:** Wednesday, August 25
Starting at 10:30am PDT
No Onsite Inspection will be offered for this sale
For Info., Terms and Bidding, Go to:
**360Bid.Sale**

Sale Conducted by:
**THREESIXTY**
ASSET ADVISORS
805.496.8087

### BUSINESS OPPORTUNITIES

**FAIRWAY**

Auction for the patents and other IP assets of Caleb Avery t'Bear (aka Nathaniel Caleb Avery aka Nathaniel Caleb Avery t'Bear) and Fairway IP Holdings, Ltd. will take place on September 16 at 10:00 a.m. (PST) via video conference.
These assets include active U.S. patents covering methods and systems for determining optimal pricing and allocation of securities in an open, competitive environment.
For information, contact Joshua Pichinson JP@SherwoodPartners.com | 650.454.8026

### CLASS ACTION

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK**

OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,
Plaintiff,
v.
TELIGENT, INC. and JASON GRENFELL-GARDNER, Defendants.

Case No. 1:19-cv-03354-VM
**SUMMARY NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**
**EXHIBIT A-3**

**TO: ALL PERSONS AND ENTITIES WHO PURCHASED OR ACQUIRED THE COMMON STOCK OF TELIGENT, INC. ("TELIGENT" OR THE "COMPANY") DURING THE PERIOD FROM MARCH 7, 2017 IN THE AFTERMARKET TO NOVEMBER 6, 2017 AT THE CLOSE OF REGULAR TRADING, INCLUSIVE**

**THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Southern District of New York, that a hearing will be held on November 12, 2021, at 10:30 a.m. before the Honorable Victor Marrero, United States District Judge, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, for the purpose of determining: (1) whether the proposed Settlement of the above-captioned Action, as set forth in the settlement agreement reached between the parties, consisting of Six Million Dollars ($6,000,000) in cash, should be approved as fair, reasonable, and adequate to the Members of the Class; (2) whether the release by Class Members of claims as set forth in the settlement agreement should be authorized; (3) whether the proposed plan to distribute the settlement proceeds (the "Plan of Allocation") is fair, reasonable, and adequate; (4) whether the application by Plaintiff's counsel for an award of attorneys' fees and expenses and any award to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) should be approved; and (5) whether the Judgment, in the form attached to the settlement agreement, should be entered. The Court may change the date of the Settlement Hearing without providing another notice. You do **NOT** need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

IF YOU PURCHASED OR ACQUIRED ANY OF THE COMMON STOCK OF TELIGENT DURING THE PERIOD FROM MARCH 7, 2017 IN THE AFTERMARKET TO NOVEMBER 6, 2017 AT THE CLOSE OF REGULAR TRADING, INCLUSIVE, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION.

To share in the distribution of the Net Settlement Fund, you must establish your rights by submitting a Proof of Claim and Release ("Proof of Claim") by mail (postmarked no later than December 7, 2021) or submitted electronically at www.teligentsecuritiessettlement.com no later than December 7, 2021. Your failure to submit your Proof of Claim by December 7, 2021, will subject your claim to possible rejection and may preclude you from receiving any of the recovery in connection with the Settlement of this Action. If you are a Member of the Class and do not request exclusion, you will be bound by the Settlement and any judgment and release entered in the Action, including, but not limited to, the Judgment, whether or not you submit a Proof of Claim. Plaintiff's Counsel represent you and other Members of the Class. If you want to be represented by your own lawyer, you may hire one at your own expense.

If you have not received a copy of the Notice, which more completely describes the Settlement and your rights thereunder (including your right to object to the Settlement or exclude yourself from the Class), or a Proof of Claim form, you may obtain these documents, as well as a copy of the Stipulation (which, among other things, contains definitions for the defined terms used in this Summary Notice) and other Settlement documents, online at www.teligentsecuritiessettlement.com, or by writing to:

Teligent Securities Settlement
Claims Administrator
P.O. Box 5324, New York, NY 10150-5324
1-833-460-1725, www.teligentsecuritiessettlement.com

Inquiries may also be made to a representative of Plaintiff's Counsel at:
SCOTT+SCOTT ATTORNEYS AT LAW LLP
Jeffrey P. Jacobson
230 Park Ave., Fl. 17, New York, NY 10169
Phone: 1-800-332-2259

Inquiries should **NOT** be directed to Defendants, the Court, or the Clerk of the Court.

IF YOU DESIRE TO BE EXCLUDED FROM THE CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION SUCH THAT IT IS POSTMARKED NO LATER THAN OCTOBER 22, 2021, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. ALL MEMBERS OF THE CLASS WHO HAVE NOT REQUESTED EXCLUSION FROM THE CLASS WILL BE BOUND BY THE SETTLEMENT ENTERED IN THE LITIGATION EVEN IF THEY DO NOT FILE A TIMELY PROOF OF CLAIM.

IF YOU ARE A CLASS MEMBER, YOU HAVE THE RIGHT TO OBJECT TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY PLAINTIFF'S COUNSEL FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND/OR THE APPLICATION FOR PAYMENT TO PLAINTIFF FOR THEIR TIME AND EXPENSES. ANY WRITTEN OBJECTIONS MUST BE SENT TO THE COURT NO LATER THAN OCTOBER 22, 2021, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. IF YOU FAIL TO OBJECT IN THE MANNER AND FORM EXPLAINED IN THE NOTICE YOU WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND WILL NOT BE ABLE TO APPEAR SEPARATELY AT THE SETTLEMENT HEARING OR MAKE ANY OBJECTION TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY PLAINTIFF'S COUNSEL FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND/OR THE APPLICATION FOR PAYMENT TO PLAINTIFF FOR THEIR TIME AND EXPENSES.

DATED: JULY 20, 2021      BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### BUSINESS OPPORTUNITIES

**BUYERS WANTED**
CRUDE OIL/JET FUEL/D6/EN590.
Viscountusa@msn.com
1 213 382 1058

### BUSINESS OPPORTUNITIES

**RESTAURANT FOR SALE**
Highly successful family run restaurant located in the beautiful Lakes Region of New Hampshire with a great reputation and growth potential.
Sale includes business and real estate.
Call Charlie for details (603) 601-7426

**MICROSUN**

Bright. Clear. Healthy Light.

Microsun's **high-output light** now in an LED floor lamp

**sōlyteXL**

The light you need. Where you need it.

● Flexible & Adjustable
● Directional Light Source
● 5 Brightness Levels
● 95+ CRI
● 3000+ Lux
● 4000K Color Temperature

**Introductory Special 25% OFF**

Reg. $260* **NOW $195***
with Promo Code WS218

Table Lamp Also Available
Reg. $160* **NOW $120***

**microsun.com • 888-328-8701**

*Promo is for 25% off regular pricing. S/H extra. Expires 10/15/21.

# AFFIDAVIT

**STATE OF NEW JERSEY**                    )
                                           ) ss:
**CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX )**

I, Tan Lo, being duly sworn, depose and say that I am the Advertising Clerk of the

Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general

circulation throughout the United States, and that the notice attached to this

Affidavit has been regularly published in THE WALL STREET JOURNAL for

National distribution for


1 insertion(s) on the following date(s): AUG-19-2021;

ADVERTISER: Teligent Securities Settlement;

and that the foregoing statements are true and correct to the best of my knowledge.

_____

Sworn to before me this
19    day of Aug         2021

_____
Notary Public



THE WALL STREET JOURNAL.

Thursday, August 19, 2021 | **B5**

## TECHNOLOGY

# Robot Trucks Have a Long Road Ahead

**Investors rush into startups but a path to commercial markets remains a challenge**

By Heather Somerville And Jennifer Smith



TuSimple safety driver Mickie Muller sits in the driver's seat as the truck is in autonomous mode.

*CASSIDY ARAIZA FOR THE WALL STREET JOURNAL*

On a recent scorching day on the outskirts of Tucson, Ariz., a tractor-trailer equipped with an autonomous-driving system from technology company **TuSimple** Holdings Inc. waited at a busy overpass until the light turned green and a voice came over the intercom in the cab: "intersection clear."

The steering wheel revolved and the truck turned left, rolling itself down a highway on-ramp while in the driver's seat veteran truck driver Mickie Muller watched closely, her hands poised over the wheel and feet near the floor pedals.

For TuSimple, it was a perfectly executed maneuver, one the company practiced repeatedly under mostly ideal conditions on a familiar route.

Days before and hundreds of miles away in Cupertino, Calif., a self-driving **PlusAI** Corp. big rig undertook an even more ambitious operation, merging onto Interstate 280 and into Bay Area rush hour.

The maneuvers on public roads, both short demonstrations with no commercial cargo on board, show the potential of a technology that has drawn billions of dollars of investment. But they show how far it has to go before it can operate safely without a human at the wheel, allowing semi trucks to haul themselves over busy interstate highways, through gnarly weather and routes lined with construction.

Most startups are pushing to achieve what is known as Level 4 automation, meaning the vehicle is capable of performing all driving functions under certain conditions. That would signal that the technology can be useful at a commercial scale, and the startups can start earning more meaningful revenue.

In the past four months, four prominent self-driving trucking companies collectively valued at about $26 billion, including TuSimple and Plus, rushed to tap public markets, leveraging the robust market for initial public offerings and the popularity of a vehicle known as a special-purpose acquisition company, or SPAC, in bids to raise large sums of money.

Investors poured roughly $5.7 billion into TuSimple, Plus, Embark Trucks Inc. and Aurora Innovation Inc. in the past year, according to an analysis by The Wall Street Journal. The shift to public markets adds greater scrutiny to these companies, and urgency to demonstrate that they can map a path into commercial markets.

There is a lot still to do: test-drive billions of miles, lobby regulators to permit trucks to run without drivers, and convince a skeptical freight-hauling industry to put autonomous technology to work in daily operations.

A successful commercial deployment would go a long way to building confidence in self-driving technology, which Silicon Valley has been developing for about 12 years but is still largely limited to small-scale pilot projects with drivers behind the wheel. Assuming the SPAC deals are completed, the four trucking companies will be armed with a combined $4.2 billion to tackle the challenge.

TuSimple, Plus, Embark and Aurora, each in a battle for customers and truck builders as partners, say they plan to launch commercial driverless trucking systems in the U.S.—without a human in the cab—in three years or less.

"Speed to market is definitely important," said Patrick Dillon, chief financial officer at TuSimple, which plans to start mass production of trucks with its self-driving system in 2024 through an agreement with truck manufacturer Navistar International Corp.

TuSimple is doing a small amount of commercial freight hauling for paying customers in semis outfitted with autonomous-driving technology, as it refines its real-world trucking capabilities. In February, Plus started providing some cargo haulers, including Amazon.com Inc., with a self-driving system with limited features.

Investors disappointed by development stumbles and missed deadlines among robot-axi companies are betting on a faster path to automation in trucking. Backers say they can cut labor costs, speed shipping times, improve road safety and reduce emissions and fuel costs by eliminating poor driving such as slamming the brakes.

---

## Rift Forms At Didi's Board

*Continued from page B1*

currently has no rules that require internet companies to obtain Chinese government approval for overseas listings; its regulators are in the process of changing that.

Messrs. Lau and Zhang had earlier advised Didi Chairman Will Cheng and President Jean Liu—who also sit on the eight-member board—against rushing to go public in the midst of China's regulatory crackdown on the business practices of internet-technology companies, the people familiar with the matter said. The South China Morning Post earlier reported that the Tencent and Alibaba executives advised Didi to defer its New York listing.

The fallout from Didi's IPO—and China's intensifying regulatory crackdown on internet-technology and other businesses—rippled across companies. Many Chinese tech startups were forced to reconsider their overseas IPO plans and global investors have become less eager to invest in companies from China.

Days after Didi's listing, China said it would tighten rules for companies seeking to sell shares abroad. A draft regulation requires tech companies with data from more than one million users to undergo cybersecurity reviews before pursuing foreign listings.

Alibaba and Tencent are facing their own regulatory issues and can ill afford further entanglements with Didi's problems. In April, Alibaba was slapped with a record $2.8 billion fine for anticompetitive behavior on its e-commerce marketplace. Various Tencent subsidiaries also faced punitive actions, although the company as a whole hasn't been the subject of major regulatory scrutiny. Shares of both companies have tumbled this year.

Before Didi's IPO, China's cyberspace regulator suggested the company postpone its share sale until it completed a data-security review, meant in part to ensure that private data from Didi's users wouldn't be shared outside the country.

It isn't known how much detail Didi executives shared with the company's board. Didi's IPO prospectus made several references to data security, but didn't mention the cyberspace administration's request for a review.

"The board is a venue to make strategic decisions and an IPO is a strategic decision. It would be unusual if the management has not discussed that in detail or has not passed on the guidance from a regulator for an IPO at the board," said Jamie Allen, secretary-general of the Asia Corporate Governance Association in Hong Kong.

Didi signaled to the cyberspace regulator that it would consider the request, but at the same time pressed ahead with the IPO. The company went public on the New York Stock Exchange on June 30—the eve of the Communist Party's centennial celebration—with little publicity.

After drawing Beijing's ire, Didi has been criticized in China by government officials, investors and entrepreneurs, who have called it two-faced.

Mr. Cheng, an Alibaba alumnus, started Didi in 2012 after a six-year stint at the e-commerce giant, which is based in Hangzhou. He couldn't obtain funding from his former employer because then-Chairman Jack Ma informally banned investing in startups founded by alumni, according to people familiar with the matter. The informal ban, designed to help Alibaba keep talent from leaving to start other companies, was later scrapped partly because Mr. Ma regretted missing out on Didi, the people said.

Filling the void, Tencent became one of Didi's earliest and most important backers. The social-media and gaming giant first invested $15 million in the company in 2013 and pitched in on several more fundraising rounds in the ensuing years, according to PitchBook data. Tencent owned 6.8% of Didi at the time of its IPO.

Alibaba backed Didi's former rival, Kuaidi. When Didi and Kuaidi engaged in a costly battle for market share in China between 2013 and 2015, their competition fueled tensions between Tencent and Alibaba, both of which were pushing for greater adoption of their mobile payment networks—WeChat Pay and Alipay—through ride-hailing services.

In 2015, Didi and Kuaidi merged. Alibaba became an investor in the combined company, Didi Chuxing, but its stake is much smaller than Tencent's and wasn't listed in Didi's listing prospectus. Both Tencent and Alibaba have various business dealings with Didi.

### Didi Global's American depositary receipts



$17, 16, 15, 14 (IPO price), 13, 12, 11, 10, 9, 8

July 2021 — Aug.

### Three-month stock performance



10%, -10, -20, -30

■ Alibaba
■ Tencent

June 2021 — Aug.

Source: FactSet

---

## Tencent Eyes Curbs For Minors

*Continued from page B1*

its exclusive licensing deals with label companies and halted a Tencent-led merger of two game-streaming platforms, saying that combining the two companies would hurt competition.

As Beijing widens its scrutiny, Tencent has further limited game time and spending limits for China's youth, and it has cracked down on minors misusing adult accounts. The company said minors accounted for a small percentage of its online game revenue, with players under the age of 16 accounting for only 2.6% of its gross game receipts in China during the second quarter.

"The government wants to foster a long-term, sustainable development of the internet industry," said Mr. Lau. "We should expect, in the near future, more regulations should be coming."

The company is being "very cautious" in opening its services to other companies' platforms because of complicated questions, he said, such as different platforms charging different fees from merchants. Those issues need to be discussed and resolved over time, he added.

---

### Bright. Clear. Healthy Light.

**MICROSUN**

Microsun's **high-output light** now in an LED floor lamp

**sōlyteXL**

*The light you need. Where you need it.*

- Flexible & Adjustable
- Directional Light Source
- 5 Brightness Levels
- 95+ CRI
- 3000+ Lux
- 4000K Color Temperature

**Introductory Special 25% OFF**

Reg. $260* **NOW $195***
with Promo Code WS218

Table Lamp Also Available
Reg. $160* **NOW $120***

microsun.com • 888-328-8701

*Promo is for 25% off regular pricing. S/H extra. Expires 10/15/21.*

---

**ADVERTISEMENT**

## The Marketplace
To advertise: 800-366-3975 or WSJ.com/classifieds

### ANNOUNCEMENTS

**NOTICE OF PUBLIC SALE**
**CERTAIN ASSETS OF TOY OVERLORD INC.**
**dba MEGALOPOLIS**

Description of assets to be sold: The assets to be sold consist of certain of the tangible and intangible assets used in the business of Toy Overlord, Inc. dba Megalopolis, a Delaware corporation including remaining inventory and general intangibles.
Location: Online and in-person at the Offices of Brian Testo Associates, LLC
By Order of Secured Creditor
UCC 9-610 Foreclosure Auction
**Date:** August 25, 2021 • **Time:** 1:00 PM PDT
Call or email request for more information
Brian Testo, Brian Testo Associates, LLC
4085 E. Thousand Oaks Blvd., #105,
Westlake Village, CA 91362
(818) 592-6592 x101, briantesto@gmail.com
**www.btesto.com**

**NOTICE OF PUBLIC SALE**
**CERTAIN ASSETS OF PAUL EVANS, LLC**

Description of assets to be sold:
The assets to be sold consist of certain of the tangible and intangible assets used in the business of Paul Evans, LLC including remaining inventory and general intangibles.
Location: Online and in-person at the Offices of Brian Testo Associates, LLC
By Order of Secured Creditor
UCC 9-610 Foreclosure Auction
**Date:** August 25, 2021 • **Time:** 11:00AM PDT
Call or email request for more information
Brian Testo, Brian Testo Associates, LLC
4085 E. Thousand Oaks Blvd., #105,
Westlake Village, CA 91362
(818) 592-6592 x101, briantesto@gmail.com
**www.btesto.com**

### AUCTIONS

*By Order of the US Bankruptcy Court,
Case #2:20-bk-21022-BR*
**ONLINE PUBLIC AUCTION**
**Law Offices of Girardi Meese**
Furniture • Furnishings • Collectibles
Art • Wine • Office Equipment • Cadillac



**100's of Lots!**

**Auction Closes:** Wednesday, August 25
Starting at 10:30am PDT
No Onsite Inspection will be offered for this sale
For Info., Terms and Bidding, Go to:
**360Bid.Sale**

Sale Conducted by:

**THREESIXTY**
ASSET ADVISORS
805.496.8087

### BUSINESS OPPORTUNITIES

**FAIRWAY**

Auction for the patents and other IP assets of Caleb Avery t'Bear (aka Nathaniel Caleb Avery aka Nathaniel Caleb Avery t'Bear) and Fairway IP Holdings, Ltd. will take place on September 16 at 10:00 a.m. (PST) via video conference.
These assets include active U.S. patents covering methods and systems for determining optimal pricing and allocation of securities in an open, competitive environment.
For information, contact Joshua Pichinson
JP@SherwoodPartners.com | 650.454.8026

### CLASS ACTION

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK**

OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,
Plaintiff,
v.
TELIGENT, INC. and JASON GRENFELL-GARDNER,
Defendants.

Case No. 1:19-cv-03354-VM
**SUMMARY NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**
**EXHIBIT A-3**

**TO: ALL PERSONS AND ENTITIES WHO PURCHASED OR ACQUIRED THE COMMON STOCK OF TELIGENT, INC. ("TELIGENT" OR THE "COMPANY") DURING THE PERIOD FROM MARCH 7, 2017 IN THE AFTERMARKET TO NOVEMBER 6, 2017 AT THE CLOSE OF REGULAR TRADING, INCLUSIVE**

THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Southern District of New York, that a hearing will be held on November 12, 2021, at 10:30 a.m. before the Honorable Victor Marrero, United States District Judge, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, for the purpose of determining: (1) whether the proposed Settlement of the above-captioned Action, as set forth in the settlement agreement reached between the parties, consisting of Six Million Dollars ($6,000,000) in cash, should be approved as fair, reasonable, and adequate to the Members of the Class; (2) whether the release by Class Members of claims as set forth in the settlement agreement should be authorized; (3) whether the proposed plan to distribute the settlement proceeds (the "Plan of Allocation") is fair, reasonable, and adequate; (4) whether the application by Plaintiff's counsel for an award of attorneys' fees and expenses and any award to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) should be approved; and (5) whether the Judgment, in the form attached to the settlement agreement, should be entered. The Court may change the date of the Settlement Hearing without providing another notice. You do **NOT** need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

IF YOU PURCHASED OR ACQUIRED ANY OF THE COMMON STOCK OF TELIGENT DURING THE PERIOD FROM MARCH 7, 2017 IN THE AFTERMARKET TO NOVEMBER 6, 2017 AT THE CLOSE OF REGULAR TRADING, INCLUSIVE, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION.

To share in the distribution of the Net Settlement Fund, you must establish your rights by submitting a Proof of Claim and Release ("Proof of Claim") by mail (postmarked no later than December 7, 2021) or submitted electronically at www.teligentsecuritiessettlement.com no later than December 7, 2021. Your failure to submit your Proof of Claim by December 7, 2021, will subject your claim to possible rejection and may preclude you from receiving any of the recovery in connection with the Settlement of this Action. If you are a Member of the Class and do not request exclusion, you will be bound by the Settlement and any judgment and release entered in the Action, including, but not limited to, the Judgment, whether or not you submit a Proof of Claim. Plaintiff's Counsel represent you and other Members of the Class. If you want to be represented by your own lawyer, you may hire one at your own expense.

If you have not received a copy of the Notice, which more completely describes the Settlement and your rights thereunder (including your right to object to the Settlement or exclude yourself from the Class), or a Proof of Claim form, you may obtain these documents, as well as a copy of the Stipulation (which, among other things, contains definitions for the defined terms used in this Summary Notice) and other Settlement documents, online at www.teligentsecuritiessettlement.com, or by writing to:

Teligent Securities Settlement
Claims Administrator
P.O. Box 5324, New York, NY 10150-5324
1-833-460-1725, www.teligentsecuritiessettlement.com

Inquiries may also be made to a representative of Plaintiff's Counsel at:
SCOTT+SCOTT ATTORNEYS AT LAW LLP
Jeffrey P. Jacobson
230 Park Ave., Fl. 17, New York, NY 10169
Phone: 1-800-332-2259

Inquiries should **NOT** be directed to Defendants, the Court, or the Clerk of the Court.

IF YOU DESIRE TO BE EXCLUDED FROM THE CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION SUCH THAT IT IS POSTMARKED NO LATER THAN OCTOBER 22, 2021, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. ALL MEMBERS OF THE CLASS WHO HAVE NOT REQUESTED EXCLUSION FROM THE CLASS WILL BE BOUND BY THE SETTLEMENT ENTERED IN THE LITIGATION EVEN IF THEY DO NOT FILE A TIMELY PROOF OF CLAIM.

IF YOU ARE A CLASS MEMBER, YOU HAVE THE RIGHT TO OBJECT TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY PLAINTIFF'S COUNSEL FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND/OR THE APPLICATION FOR PAYMENT TO PLAINTIFF FOR THEIR TIME AND EXPENSES. ANY WRITTEN OBJECTIONS MUST BE SENT TO THE COURT NO LATER THAN OCTOBER 22, 2021, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. IF YOU FAIL TO OBJECT IN THE MANNER AND FORM EXPLAINED IN THE NOTICE YOU WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND WILL NOT BE ABLE TO APPEAR SEPARATELY AT THE SETTLEMENT HEARING OR MAKE ANY OBJECTION TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY PLAINTIFF'S COUNSEL FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND/OR THE APPLICATION FOR PAYMENT TO PLAINTIFF FOR THEIR TIME AND EXPENSES.

DATED: JULY 20, 2021       BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### BUSINESS OPPORTUNITIES

**BUYERS WANTED**
**CRUDE OIL/JET FUEL/D6/EN590.**
Viscountusa@msn.com
**1 213 382 1058**

### BUSINESS OPPORTUNITIES

**RESTAURANT FOR SALE**
Highly successful family run restaurant located in the beautiful Lakes Region of New Hampshire with a great reputation and growth potential.
Sale includes business and real estate.
Call Charlie for details (603) 601-7426



# Scott+Scott Attorneys at Law LLP Announces a Notice of Proposed Settlement of Class Action for the Teligent, Inc. Securities Class Action

August 19, 2021 09:16 AM Eastern Daylight Time

PHILADELPHIA--(BUSINESS WIRE)--The following statement is being issued by Scott+Scott Attorneys at Law LLP regarding the Teligent, Inc. Class Action Settlement.

TO: ALL PERSONS AND ENTITIES WHO PURCHASED OR ACQUIRED THE COMMON STOCK OF TELIGENT, INC. ("TELIGENT" OR THE "COMPANY") DURING THE PERIOD FROM March 7, 2017 in the aftermarket to November 6, 2017 at the close of regular trading, INCLUSIVE.

THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Southern District of New York, that a hearing will be held on **November 12, 2021, at 10:30 a.m.** before the Honorable Victor Marrero, United States District Judge, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, for the purpose of determining: (1) whether the proposed Settlement of the above-captioned Action, as set forth in the settlement agreement reached between the parties, consisting of Six Million Dollars ($6,000,000) in cash, should be approved as fair, reasonable, and adequate to the Members of the Class; (2) whether the release by Class Members of claims as set forth in the settlement agreement should be authorized; (3) whether the proposed plan to distribute the settlement proceeds (the "Plan of Allocation") is fair, reasonable, and adequate; (4) whether the application by Plaintiff's counsel for an award of attorneys' fees and expenses and any award to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) should be approved; and (5) whether the Judgment, in the form attached to the settlement agreement, should be entered. The Court may change the date of the Settlement Hearing without providing another notice. You do NOT need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

IF YOU PURCHASED OR ACQUIRED ANY OF THE COMMON STOCK OF TELIGENT DURING THE PERIOD FROM March 7, 2017 IN THE AFTERMARKET to November 6, 2017 at the close of regular trading, INCLUSIVE, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION.

To share in the distribution of the Net Settlement Fund, you must establish your rights by submitting a Proof of Claim and Release ("Proof of Claim") by mail (postmarked no later than **December 7, 2021**) or submitted electronically at www.teligentsecuritiessettlement.com no later than **December 7, 2021**. Your failure to submit your Proof of Claim by **December 7, 2021**, will subject your claim to possible rejection and may preclude you from receiving any of the recovery in connection with the Settlement of this Action. If you are a Member of the Class and do not request exclusion, you will be bound by the Settlement and any judgment and release entered in the Action, including, but not limited to, the Judgment, whether or not you submit a Proof of Claim. Plaintiff's Counsel represent you and other Members of the Class. If you want to be represented by your own lawyer, you may hire one at your own expense.

If you have not received a copy of the Notice, which more completely describes the Settlement and your rights thereunder (including your right to object to the Settlement or exclude yourself from the Class), or a Proof of Claim form, you may obtain these documents, as well as a copy of the Stipulation (which, among other things, contains definitions for the

defined terms used in this Summary Notice) and other Settlement documents, to write at www.teligentsecuritiessettlement.com, or by writing to:

Teligent Securities Settlement
Claims Administrator
P.O. Box 5324
New York, NY 10150-5324
1-833-460-1725
www.teligentsecuritiessettlement.com

Inquiries may also be made to a representative of Plaintiff's Counsel at:

SCOTT+SCOTT ATTORNEYS AT LAW LLP
Jeffrey P. Jacobson
230 Park Ave., Fl. 17
New York, NY 10169
Phone: 1-800-332-2259

Inquiries should NOT be directed to Defendants, the Court, or the Clerk of the Court.

IF YOU DESIRE TO BE EXCLUDED FROM THE CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION SUCH THAT IT IS POSTMARKED NO LATER THAN **OCTOBER 22, 2021**, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. ALL MEMBERS OF THE CLASS WHO HAVE NOT REQUESTED EXCLUSION FROM THE CLASS WILL BE BOUND BY THE SETTLEMENT ENTERED IN THE LITIGATION EVEN IF THEY DO NOT FILE A TIMELY PROOF OF CLAIM.

IF YOU ARE A CLASS MEMBER, YOU HAVE THE RIGHT TO OBJECT TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY PLAINTIFF'S COUNSEL FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND/OR THE APPLICATION FOR PAYMENT TO PLAINTIFF FOR THEIR TIME AND EXPENSES. ANY WRITTEN OBJECTIONS MUST BE SENT TO THE COURT NO LATER THAN **OCTOBER 22, 2021**, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. IF YOU FAIL TO OBJECT IN THE MANNER AND FORM EXPLAINED IN THE NOTICE YOU WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND WILL NOT BE ABLE TO APPEAR SEPARATELY AT THE SETTLEMENT HEARING OR MAKE ANY OBJECTION TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY PLAINTIFF'S COUNSEL FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND/OR THE APPLICATION FOR PAYMENT TO PLAINTIFF FOR THEIR TIME AND EXPENSES.

**This is only a summary. For details, including information on objecting or filing an opt-out, or to file a claim, visit the settlement website, www.teligentsecuritiessettlement.com, or call the Claims Administrator at 1833-460-1725.**

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE ABOUT THIS NOTICE.
ORDER DATED: July 20, 2021


Contacts
Jeffrey P. Jacobson, (646) 992-4756